**CLAY COUNTY, a Political Subdivision of the State of Florida, et al., v. J. E. TONEY, and WAVER A. TONEY, his wife, et al.**

14 So. (2nd) 193                                    June Term, 1943
June 15, 1943                                           Division B

*Knight & Knight,* for petitioners.

*J. Turner Butler,* for respondents.

CHAPMAN, J.:

It was made to appear by a petition for a common law writ of certiorari that W. A. Cook and wife, Lucile Cook, owned a purchase money mortgage given by Gus Panos and wife, Helen Panos, on lands identified in the record as Parcel 19, situated in Clay County, Florida; that the Board of

County Commissioners of Clay County, pursuant to an agreement reached with the State Road Department, filed proceedings in condemnation in the Circuit Court of Clay County for the purpose of acquiring title to described lands, of which Parvel 19, *supra*, is a part for right of way purposes, in which parties, inclusive of petitioners, were made defendants.

Petitioners filed an appropriate pleading and the issues so made, with others, were submitted to a jury, thereby resulting in a verdict and judgment for the plaintiff in condemnation. The verdict and judgment awarded the sum of $12,600.00 to Helen Panos, as the title holder of Parcel 19. The amount due petitioners on the purchase money mortgage on October 24, 1942, the date of trial, was calculated at the sum of $4,652.90. The plaintiffs in condemnation paid into the Registry of the Circuit Court of Clay County, within the time fixed by statutes, the sum of $12,600.00, with an additional sum of $1,000.00 as attorney's fees for counsel representing parties interested in Parcel 19.

The petitioners failed to record, among the Public Records of Clay County, the purchase money mortgage, and by sworn petition for distribution represented that the note and mortgage was by them lost on or about August 15, 1942. The real point in controversy, arising out of the foregoing factual background, is largely the terms and conditions of an indemnity bond by the petitioners for the protection of Gus Panos and wife, Helen Panos, against the possible reappearance of the lost note in the hands of an innocent purchaser. The judgment of condemnation appears to have satisfied interested counsel that the lost mortgage is not a lien upon the described land.

Petitioners, pursuant to a court order dated January 29, 1943, tendered to the trial court for approval a bond signed by them and a surety company, payable to Helen Panos and Gus Panos, either or both, within five years, the sum of $5,000.00. The bond was conditioned to pay Gus Panos and Helen Panos, either or both, all loss, damages and expenses, including a reasonable attorney's fee, sustained or incurred or that may be put to in defending any action instituted by any person upon the lost mortgage note during a period of

five years after January 4, 1944, the date of the last payment payable under the note.

Prior to the approval by the trial court of the tendered bond, a copy of the lost note was produced and was shown to be under seal and possibly signed only by Gus Panos, and the last payment thereunder matured on December 15, 1943. The trial court, on March 12, 1943, entered an order declining to approve the tendered bond, and amended the second paragraph of the order dated January 29, 1943, by striking the words "five years" and inserting in lieu thereof the words "twenty years," and adding in paragraph two the words "whether the same be signed by Gus Panos and Helen Panos or by either one of them."

Counsel for petitioners contend that it is not only unreasonable but financially impossible to obtain and have approved the described bond and to pay or cause to be paid annual premiums thereon over a period of twenty years or during the life of the note under seal. Counsel for respondents point out that the giving of the required bond is for the protection of his clients during the twenty year period or during the life of the note under seal and no just or lawful resaon now exists requiring the respondents to pay the lost note the second time. That the lack of reasonable diligence causing the loss of the note by the petitioners should not for many lawful reasons be visited upon the respondents. We observe the elements of good faith but honest difference of views now existing between the parties litigant and counsel arising out of the involved controversies.

The power of the court, on seasonable and proper application, to order or decree the execution and delivery, inclusive of the approval, of an indemnity bond, conditioned according to law, for the purpose of the protection or saving harmless the maker, or some other party, liable on a negotiable instrument which has been lost by the holder or owner against any possible losses, if any, arising therefrom because of its subsequent re-appearance in the hands of an innocent third person, was recognized by this Court in the case of Lovingood v. Butler Construction Co., 100 Fla. 1252, 131 So. 126, 74 A.L.R. 513. Such proceedings arise more frequently when suit is

brought to enforce the payment of the lost instrument and it becomes necessary to protect the defendant against possible losses. These several matters are addressed largely to the sound judicial discretion of the court.

The authorities recognize the distinction and difference of liability on negotiable instruments lost prior to maturity and those lost after maturity. Ordinarily, a person accepting a negotiable instrument after maturity does not generally become a holder in due course and a lost negotiable instrument in such hands is charged with all the equities existing between the original parties. See Sections 674.55, 674.57, 674.58, 674.59, and 674.60, Fla. Stats. 1941.

Section 674.54 Fla. Stat. 1941, defines a holder in due course thusly:

"Who is Holder in Due Course.—A holder in due course is a holder who has taken the instrument under the following conditions.

"(1) That it is complete and regular upon its face;

"(2) That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact;

"(3) That he took it in good faith and for value;

"(4) That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

The loss or destruction of a negotiable instrument does not extinguish the rights, duties and obligations of the parties. One paying a negotiable instrument generally has the right and should insist upon its production and surrender at the time of payment. If production and surrender is impossible, the party making payment is entitled to protection in the form of a suitable bond against the possibility of the instrument subsequently turning up in the hands of innocent third parties. Some authorities hold that an indemnity bond cannot be required where the negotiable instrument was lost after maturity or where the statute of limitations has run against the instrument, or where the lost instrument was payable to order and not endorsed. See 34 Am. Jur. 616-17, par. 45; 38 C.J. 266, par. 47; 17 R.C.L. 1185-6, par. 21.

Petitioners, on October 12, 1942, filed in the lower Court joint and several answers under oath. Pertinent and material portions are viz:

". . . , and that the said mortgagees, W. A. Cook and Lucile Cook, his wife, have never transferred, sold, pledged or assigned either said mortgage or note, but that the same was stolen from the said Lucile Cook on or about August 15, 1942, and has never been recovered; that the said mortgage note was not endorsed by either said W. A. Cook or Lucile Cook to whose order the same was payable by its terms, and that said W. A. Cook and Lucile Cook are still the true owners thereof, and that the principal sum of $4600.00 together with interest thereon at the rate of 6% per annum from August 15, 1942, remains due and unpaid thereon, and that these defendants W. A. Cook and Lucile Cook, his wife, have a first mortgage lien upon said lands to secure the payment of all of said sums; . . ."

We consider, but do not decide, the question of whether or not an alleged innocent holder of the lost note is a holder in due course within the meaning of Section 674.54, Fla. Stats. 1941. The following facts, sustained by the record casts a cloud of uncertainty on any such a contention, are viz: (1) W. A. Cook and wife, Lucile Cook, were parties to the condemnation suit and they and all parties claiming by or through them are bound by the verdict and judgment entered in the cause; (2) the sworn answer of W. A. Cook and Lucile Cook, in part, is to the effect that the lost note was payable to them and that neither of them endorsed or delivered the same to a third person; (3) the note is dated March 2, 1942, and is for the sum of $5,800.00, bearing interest at the rate of 6% per annum. The $5,800.00 is made payable $300.00 (plus interest on the remainder thereof) on the 15th day of each month, beginning May 15, 1942, and payable in 19 consecutive months; the remainder of $100.00 is payable on the 15th day of the twentieth month. If a default occurs in the payment of either monthly installment of principal or interest, then the whole note becomes due and payable. (Whether or not the note was in default on August 15, 1942, is not clear). (4) The sworn answer recites that

the note was stolen from Lucile Cook on or about August 15, 1942; (5) a legal presumption is to the effect that all parties claiming under or through or in privity with W. A. Cook and Lucile Cook are bound by the judgment in the condemnation suit.

It is our conclusion that the petition for a writ of certiorari should be granted in part and those portions of the challenged order dated March 12, 1943, striking the words "five years" from paragraph two of the previous order dated January 29, 1943, and inserting in lieu thereof the words "twenty years" was erroneous and is hereby quashed. The words "five years" should be reinstated in the two orders *supra*. The petition in all other respects is hereby denied.

It is so ordered.

BUFORD, C. J., TERRELL and ADAMS, JJ., concur.