580 So.2d 641 (1991)
FLORIDA ASSOCIATION OF COUNTIES, INC., a Non-Profit Florida Corporation; Florida League of Cities, Inc., a Nonprofit Florida Corporation; and Sandra Glenn and Robert Anderson, Citizens and Taxpayers of State of Florida and Respectively of Seminole County and Sarasota County, Florida, Appellants/Cross-Appellees,
v.
DEPARTMENT OF ADMINISTRATION, DIVISION OF RETIREMENT, an Agency of the State of Florida; Professional Fire Fighters of Florida, a Labor Organization; and Florida Police Benevolent Association, a Labor Organization, Appellees/Cross-Appellants.
No. 90-2071.
District Court of Appeal of Florida, First District.
March 29, 1991.
*643 Tom R. Moore, of Roberts & Egan, Tallahassee, for appellants/cross-appellees Florida Ass'n of Counties and individual taxpayers.
Kraig A. Conn, Asst. General Counsel, Tallahassee, for appellant/cross-appellee Florida League of Cities, Inc.
Robert A. Butterworth, Atty. Gen., George L. Waas, Asst. Atty. Gen., for appellee/cross-appellant Dept. of Admin., Div. of Retirement.
Kelly Overstreet Johnson of Broad & Cassel, Tallahassee, for appellee/cross-appellant Florida Police Benevolent Ass'n.
Richard A. Sicking, Miami, for appellee/cross-appellant Professional Fire Fighters of Florida.
WENTWORTH, Senior Judge.
This is an appeal from a final judgment holding that chapter 88-238, Laws of Florida, which funded increases in retirement benefits of special risk members of the Florida Retirement System (FRS), does not violate article X, section 14 of the Florida Constitution.[1] Appellants sought a declaration that would hold chapter 88-238 to be an improper exercise of the state's taxing and spending authority because it funded the costs of increased benefits to special risk members, composed of fire fighters and law enforcement officers, by assertedly shifting the burdens from current to future taxpayers in violation of article X, section 14 of the state constitution. They named the Department of Administration, Division of Retirement (DOA), as defendant. The Florida Police Benevolent Association (PBA) and Professional Fire Fighters of Florida (PFF) intervened as defendants, and cross appealed, raising issues of hearsay and standing. We affirm.
Chapter 88-238 amended various sections of the Florida Retirement System Act[2] by increasing the retirement benefit of special risk members from two to three percent of average monthly compensation, and increasing the corresponding employer contribution effective January 1, 1989. The act provides for a phase-in of contributions and benefits over a five-year period as follows:

 % Increase in % Increase in
 Period Contributions[3] Benefits[4]
 1989 1.6 2.2
 1990 3.2 2.4
 1991 4.8 2.6
 1992 6.4 2.8
 1993+ 8.0 3.0

Appellants contend that the legislative scheme facially places on future taxpayers a discriminatory and inequitable burden to pay the cost of increased benefits that assertedly should be borne by current taxpayers. They argue, for example, that the taxpayers in 1993, and after, must pay five times the rate of 1989 taxpayers, thus violating article X, section 14, which requires that benefit increases must be funded "on *644 a sound actuarial basis." Although the standard has significance in contexts not relevant here,[5] few courts have addressed article X, section 14,[6] and we find no opinion which has definitively considered the meaning of the phrase "sound actuarial basis."
The diversity of expert opinions at trial would indicate that the phrase "sound actuarial basis" is not precisely defined in actuarial science. In one instance, actuarial soundness of a plan to increase benefits of a particular class may require the plan to prefund benefits of the class such that the assets on hand are sufficient to meet current obligations. In another, a plan to increase benefits of a particular class must first provide for the funding of the unfunded liability of the entire system. An intermediate position would permit a phase-in plan that funds the normal cost and amortizes past liability over a reasonable period, and funds each benefit increase as it becomes due rather than when it is enacted.
Faced with the absence of clear agreement among the experts who testified at trial on the meaning of "sound actuarial basis," the trial court accepted a "consensus" definition, and held that "a retirement program must be funded in such a way that the retirement fund is able to meet its continuing obligations as and when they mature." The trial court found that the phase-in of benefits and contributions is reasonably coordinated, producing no significant disparity between the obligations of current and future taxpayers. The court concluded that the funding scheme used in chapter 88-238 is consistent with article X, section 14.[7]
Appellants maintain that the legislature has determined the controlling meaning of article X, section 14 in chapter 83-37, Laws of Florida. The legislature there declared that liabilities required to fund public retirement system benefits must be funded equitably by current and future taxpayers alike, and expressly prohibited the "transfer to future taxpayers [of] any portion of the costs which may reasonably have been expected to be paid by the current taxpayers."[8] Appellants rely on Brown v. Firestone, 382 So.2d 654 (Fla. 1980), claiming that the legislative interpretation in chapter 83-37 is entitled to a presumption of correctness. We conclude that chapter 83-37 is not entitled to such presumptive weight under the circumstances.[9]
*645 There is clear record support for the trial court's decision. A state retirement actuary testified that the legislative plan was actuarially sound because the costs paid by the employers into the system would eventually cover liabilities. DOA's actuarial consultants determined that the contribution rate required to fund the cost of benefits over a thirty-year amortization period was 7.04%, and a consulting actuary fully anticipated that the 7.04% in contributions would exceed current obligations in 1993, after the plan's fourth year. Also, a pension actuary for DOA explained that "more money is going to be paid by this non-level method the Legislature adopted because [it] deferred some of the funding."
Appellants also assert that technical flaws in the original legislative bills, a lack of actuarial input concerning the final version as enacted, and the legislature's failure to inquire into employers' abilities to finance the increased contributions all render the plan unsound, and therefore constitutionally deficient. Assuming the validity of appellants' criticisms, the record does not convincingly support the conclusion that asserted defects, if corrected, are constitutionally mandated. Nor do the criticisms overcome the strong presumption of constitutionality accorded legislative enactments. Fulford v. Graham, 418 So.2d 1204, 1205 (Fla. 1st DCA 1982).
Finally, appellants advance a statutory argument that chapter 88-238 conflicts with the earlier-enacted chapter 83-37, and should yield to it. Appellants rely on Sharer v. Hotel Corp. of America, 144 So.2d 813 (Fla. 1962), which stated the general rule to be that in cases of conflicting statutory provisions, the latter expression will prevail over the former unless, as appellants suggest, a well-recognized exception applies. We find that the sounder position is to harmonize the legislature's intent for the amendment with its intent for the original law. Thus construed, chapter 83-37 does not prohibit taxing future taxpayers, but requires that whatever costs associated with chapter 88-238 are passed on to future taxpayers must be reasonable. A consulting actuary testified that the plan was actuarially sound, appropriate, thoughtful, and sensible. He added that the plan assesses the cost to the appropriate generation of taxpayers, i.e., those who are being served by the generation of special risk members who are receiving the particular benefit.
Although the trial court orally indicated a belief that the statutory plan may be "an unwise and imprudent basis" for departing from the "entry age normal cost concept" (level cost method) customarily used to fund increases in FRS benefits, it deferred to the policy choices of the coordinate legislative branch as a means of accomplishing the legislative intent. Under the circumstances, the trial court acted properly. Fulford, 418 So.2d at 1205.
On cross-appeal PBA contends that the trial court erroneously admitted, under the business records exception to the hearsay rule, numerous copies of correspondence received by DOA. Each of the challenged items of correspondence was admissible under the admissions exception to the hearsay rule, as correspondence from DOA's consulting agents and from a legislator pertaining to activities of the legislature relative to DOA. § 90.803(18)(d), Fla. Stat. (1989). Also, the reports were submitted in connection with activity of DOA *646 mandated by Florida law. § 121.031(3), Fla. Stat. (1989). They were therefore properly admitted under the business records exception. § 90.803(8), Fla. Stat. (1989).
On cross-appeal, PFF challenges the Florida Association of Counties' and Florida League of Cities' standing to initiate the suit. That argument proceeds on the stated basis that none of the governmental entities that the Association or League represent convened in formal session to authorize their participation in this suit, and that their participation violated the Sunshine Law. Even assuming this issue was preserved for appellate review, on the merits PFF's argument must fail. City of Lynn Haven v. Bay County Council of Registered Architects, Inc., 528 So.2d 1244, 1246 (Fla. 1st DCA 1988), holds that a nonprofit corporation of architects had standing to assert that City's actions invaded a statutorily-created interest in competitive negotiations, common to its members, but not shared by taxpayers generally. Here, a substantial number of the constituents comprising the Association and League have been substantially and adversely affected by Chapter 88-238, in that they have increased their FRS contributions. There is no requirement that those entities themselves must sustain special injury.
Both the Association and League are private, nonprofit corporations, and neither is a "board or commission" under section 268.011, Florida Statutes (1989). City of Miami Beach v. Berns, 245 So.2d 38, 40 (Fla. 1971) (on reh'g) ("the Legislature intended to extend application of the `open meeting' concept so as to bind every `board or commission' of the state, or of any county or political subdivision over which it has dominion or control"). Neither the Association nor League is controlled by any of the constituent local governments.
For these reasons, we affirm the final judgment of the circuit court.
SMITH and WIGGINTON, JJ., concur.
NOTES
[1] That section provides:

A governmental unit responsible for any retirement or pension system supported in whole or in part by public funds shall not after January 1, 1977, provide any increase in the benefits to the members or beneficiaries of such system unless such unit has made or concurrently makes provision for the funding of the increase in benefits on a sound actuarial basis.
Art. X, § 14, Fla. Const.
[2] Ch. 121, Fla. Stat. (Supp. 1988).
[3] Ch. 88-238, § 1, Laws of Fla. (codified at § 121.071(2)(a), Fla. Stat. (Supp. 1988)).
[4] Ch. 88-238, § 2, Laws of Fla. (codified at § 121.091(1)(a), Fla. Stat. (Supp. 1988)).
[5] See, e.g., Department of Ins. v. Southeast Volusia Hosp. Dist., 438 So.2d 815, 819 (Fla. 1983), appeal dismissed, 466 U.S. 901, 104 S.Ct. 1673, 80 L.Ed.2d 149 (1984).
[6] See, e.g., City of Tallahassee v. Public Employees Relations Comm'n, 410 So.2d 487, 491 (Fla. 1981); State ex rel. Watson v. Lee, 157 Fla. 62, 65, 24 So.2d 798, 800 (1946); Florida League of Cities, Inc. v. Department of Ins. and Treasurer, 540 So.2d 850, 853 (Fla. 1st DCA 1989), review denied, 545 So.2d 1367 (Fla. 1989); Young v. Department of Admin., Div. of Retirement, 524 So.2d 1071, 1076 (Fla. 1st DCA 1988); Turlington v. Department of Admin., Div. of Retirement, 462 So.2d 65, 67 (Fla. 1st DCA 1984).
[7] The phase-in scheme selected by the legislature to fund the benefit increases provided in chapter 88-238 is a clear departure from the plans used to fund benefit increases in the past. Customarily, the state has paid for increases in FRS benefits by amortizing the associated costs at a single rate over a thirty-year period. Appellants concede that article X, section 14 of the Florida Constitution does not dictate such a plan.
[8] The section provides:

Legislative intent.  It is the intent of the Legislature in implementing the provisions of s. 14 of Art. X of the State Constitution, relating to governmental retirement systems, that such retirement systems or plans be managed, administered, operated, and funded in such a manner as to maximize the protection of public employee retirement benefits. Inherent in this intent is the recognition that the pension liabilities attributable to the benefits promised public employees be fairly, orderly, and equitably funded by the current, as well as future, taxpayers. Accordingly, except as herein provided, it is the intent of this act to prohibit the use of any procedure, methodology, or assumptions the effect of which is to transfer to future taxpayers any portion of the costs which may reasonably have been expected to be paid by the current taxpayers. This act hereby establishes minimum standards for the operation and funding of public employee retirement systems and plans.
Ch. 83-37, § 1, Laws of Fla. (codified at § 112.61, Fla. Stat. (1983)).
[9] Brown v. Firestone, 382 So.2d 654 (Fla. 1980), expresses the principle that "[a] relatively contemporaneous construction of the constitution by the legislature is strongly presumed to be correct." Id. at 671 (citing Greater Loretta Improvement Ass'n v. State ex rel. Boone, 234 So.2d 665 (Fla. 1970)). Article X, section 14, was adopted in 1976. Neither Brown nor Greater Loretta requires the court to look to the 1983 version of section 112.61, Florida Statutes, but instead would require the court to look at its original version, which the legislature passed in 1978. See Chapter 78-170, § 1, Laws of Fla. The earlier version merely required that governmental retirement systems or plans "be managed, administered, operated, and funded in such a manner as to maximize the protection of public employee retirement benefits." Not until 1983 did the legislature express its intent in implementing the provisions of Article X, section 14, to require that a plan be "equitably funded by the current, as well as future, taxpayers." Chapter 78-170 has greater contemporaneity with the constitutional provision than does Chapter 83-37. We note that Chapter 83-37 offers no support for the appellants' position, for their theory of the case does not turn on whether public employee retirement benefits are protected, but whether future taxpayers are burdened disproportionately.