603 So.2d 587 (1992)
HILLSBOROUGH County, a political subdivision of the State of Florida, Appellant,
v.
FLORIDA RESTAURANT ASSOCIATION, INC., Appellee.
No. 91-02077.
District Court of Appeal of Florida, Second District.
July 17, 1992.
*588 Christine M. Beck, Asst. Co. Atty., Tampa, for appellant.
Kenneth A. Hoffman and Stephen W. Metz of Messer, Vickers, Caparello, Madsen, Lewis, Goldman & Metz, P.A., Tallahassee, for appellee.
DANAHY, Acting Chief Judge.
The Florida Restaurant Association [the Association] sued Hillsborough County, a chartered County [the County], seeking declaratory and injunctive relief after the County enacted an ordinance requiring that a health warning sign be posted in certain establishments that serve alcohol. After both parties moved for summary judgment, the trial court entered final summary judgment in favor of the Association. In its judgment, the trial court declared the ordinance unconstitutional and permanently enjoined its enforcement. The County appeals; we reverse.
The ordinance at issue is No. 91-11 enacted by the County's governing body, the Board of County Commissioners, on February 2, 1991, and titled "Hillsborough County Alcoholic Beverage Public Awareness Ordinance." The ordinance requires that all vendors of alcoholic beverages in the county post a sign, in a size not less than 8 1/2 X 11 inches, conspicuously on their premises. The following words are required to be on the sign:
"HEALTH WARNING"
ALCOHOL IN BEER, WINE SPIRITS AND LIQUOR, ALONE OR IN COMBINATION WITH OTHER NON-ALCOHOLIC INGREDIENTS CAN CAUSE
BIRTH DEFECTS ADDICTION INTOXICATION
REDUCE YOUR RISKS:
DO NOT DRINK DURING PREGNANCY.
DO NOT DRINK BEFORE DRIVING OR OPERATING MACHINERY.
DO NOT MIX ALCOHOL WITH OTHER DRUGS, BOTH PRESCRIPTION AND NON-PRESCRIPTION. IT CAN BE FATAL.
Failure to post the sign could result in criminal prosecution.
In the trial court the Association did not dispute that consumption of alcohol carries with it the risks of which the sign warns but argued merely that the County acted ultra vires in enacting the ordinance given the state's pervasive regulatory scheme in the preparation, service, or sale of alcoholic beverages contained in chapters 561 and 562 as well as the regulation of food service establishments in chapter 381. Even though the Association recognized that the County acted pursuant to its police power to protect the public health, safety, welfare, or morals of the community, it successfully argued that the field had been either expressly or impliedly preempted to the state by this pervasive regulatory *589 scheme. Finally, the Association successfully contended that the County acted contrary to the local government article of our constitution when it enacted an ordinance which is inconsistent with general law.
In this appeal the County raises three issues: (1) that the Association lacks standing to seek relief, (2) that there has been no implied or express preemption to the state, and (3) that the ordinance is not inconsistent with general law. The County contends that the subject matter of the ordinance is public health information. Therefore, the subject matter of the ordinance has not been preempted by the state's regulatory scheme for the manufacture, packaging, distribution, and sale of alcohol; and, further, the ordinance is not inconsistent with any general law; thus it is constitutional.

STANDING
The Association, which has 2,766 members statewide, 154 of which operate in Hillsborough County, brought the suit on behalf of the thirty-seven of that number who serve alcoholic beverages on the premises of their public food establishments and who, accordingly, were affected by the ordinance.
We agree with the trial court on this threshold issue and find that the Association has standing to contest the validity of the ordinance. That is so because the Association has met the three-prong test which confers standing to an association to sue for the benefit of its members who are more directly affected by the governmental action than the association itself. Further, we find that the three-prong test[1] for association standing in the context of administrative proceedings, Florida Home Builders Ass'n v. Dep't of Labor & Employment Sec., 412 So.2d 351 (Fla. 1982), is equally applicable to the case before us. See also Hunt v. Washington State Apple Advertising Comm'n, 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977); Warth v. Seldin, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); City of Lynn Haven v. Bay County Council of Registered Architects, Inc., 528 So.2d 1244 (Fla. 1st DCA 1988); Florida Ass'n of Counties, Inc. v. Dep't of Admin., Div. of Retirement, 580 So.2d 641 (Fla. 1st DCA 1991), aff'd, 595 So.2d 42 (Fla. 1992). Although the County argues that only thirty-seven out of the total 2,766 members of the Association are directly affected by the ordinance, it neglects to note that these thirty-seven represent forty-one percent of the total Hillsborough County membership in the Association. We do not find that a specific number or percentage is required in order to meet the standing requirement of Florida Home Builders but only that a substantial number of the Association's members have been affected in the instant case. Looking at the remaining two prongs of the test for association standing, it is clear the Association has satisfied those requirements as well.

EXPRESS PREEMPTION
Turning to the substantive issue of preemption to the state of any regulation touching on the sale of alcohol within food service establishments, we agree with the County that the state regulatory scheme is not so pervasive that the County has no room to act under its police powers. There is express preemption language in *590 section 381.061(9), Florida Statutes (1989),[2] but this subsection merely enables the Department of Health and Rehabilitative Services to adopt rules for the training of managers in food safety protection standards when they are responsible for the storage, preparation, display, and serving of foods to the public. To find a subject matter expressly preempted to the state, the express preemption language must be a specific statement; express preemption cannot be implied or inferred. Board of Trustees v. Dulje, 453 So.2d 177 (Fla. 2d DCA 1984).
The preemption language of section 381.061(9) provides:
The regulation of food safety protection standards for any required training and testing of food service establishment personnel is hereby preempted to the state. The ranking of food service establishments is also preempted to the state, provided, however, that any local ordinances establishing a ranking system in existence prior to October 1, 1988, shall remain in effect. The regulation and inspection of food service establishments licensed by chapter 509 and regulation of food safety protection standards for required training and testing of food service establishment personnel are preempted to the state.

(Emphasis added.) The Association would have us focus on the broad language, italicized above, of "regulation and inspection" in this statute which is in addition to the remaining narrower preemption language of "standards for ... training," "ranking" under certain circumstances, and "testing of ... personnel." According to the Association, the broad language of "regulation and inspection" is indeed the express preemption which prohibits the County from imposing the sign requirement. We cannot agree. First, such generalized language does not expressly refer to signage requirements as it must for us to find an express preemption. Board of Trustees v. Dulje. Second, using the well-established doctrine of noscitur a sociis, which finds words of general import colored by the more particular words accompanying them, Shadow West Apartments, Ltd. v. State, Dep't of Transp., 498 So.2d 589 (Fla. 2d DCA 1986), we cannot construe the italicized language so broadly as the Association would wish; to do so would give the general words a meaning wholly unrelated to the more specific terms in this subsection. See id. The broad-brush interpretation the Association wishes us to adopt would render the other narrower express preemption language, respecting standards for training, testing, and ranking, redundant and useless. We must assume that the legislature did not enact a pointless provision. Johnson v. Feder, 485 So.2d 409 (Fla. 1986); City of North Miami v. Miami Herald Publishing Co., 468 So.2d 218 (Fla. 1985). Thus, we cannot agree with the trial court that a health warning sign requirement treads on ground expressly reserved by the state to itself in chapter 381.061(9). Although the legislature deals with health concerns in the food handling context in chapter 381, there is no ground to equate those concerns with the County's regarding alcohol consumption as set forth in the ordinance absent a definite express preemption provision pertaining to consumer warning signs.

IMPLIED PREEMPTION
We also agree with the County that since the subject matter of the ordinance is founded on a public health concern about alcohol consumption in certain circumstances, it has not been impliedly preempted by the state's interest in the conduct, management and operation of the manufacturing, packaging, distributing and selling aspects of alcohol. Absent an express preemption provision about the posting of health warning signs on premises licensed under chapters 561 and 562, only if there is a danger of conflict with the pervasive regulatory scheme of the senior legislative body will the actions of the junior *591 legislative body be held to be impliedly preempted. Tribune Co. v. Cannella, 458 So.2d 1075, 1077 (Fla. 1984) (construing the statutory scheme of chapter 119, the Public Records Act).
Under the standard for determining implied preemption in Tribune Co. v. Cannella, the legislative scheme must be so pervasive that it completely occupies the field, thereby requiring a finding that an ordinance which attempts to intrude upon that field is null and void. The Association alleges that Florida's scheme regulating alcohol manufacture, packaging, distributing and selling meets this requirement. The Association fails to recognize, however, that this scheme itself reserves spheres of regulation to junior legislative bodies. See, e.g., § 561.14 (hours of operation in absence of county or municipal ordinance); § 562.45(2)(a) (local regulation of hours and location of operation, sanitary regulations); § 562.45(2)(b) (type of entertainment or conduct permitted in licensed premises); and, not least of all, Art. VIII, § 5, Fla. Const. (local option whether to allow sale of alcohol in the county at all). Before the legislature in 1987 specifically reserved to counties the right to regulate entertainment and conduct in licensed premises, this court had already held that local government acts are not specifically limited to those referenced by the Beverage Law. Board of County Comm'rs v. Dexterhouse, 348 So.2d 916 (Fla. 2d DCA 1977), aff'd sub nom. Martin v. Board of County Comm'rs, 364 So.2d 449 (Fla. 1978), appeal dismissed, 441 U.S. 918, 99 S.Ct. 2024, 60 L.Ed.2d 392 (1979).
In Dexterhouse, we held that an ordinance prohibiting any female from displaying her breasts in a certain manner in a licensed establishment did not interfere or conflict with the state's regulation of alcohol and that the ordinance there was a valid exercise of the county's police power. The instant ordinance does not even rise to the level of prohibiting certain conduct as did the ordinance in Dexterhouse. Although the County admits that its aim is to influence conduct, the sign mainly functions as an educational tool so that patrons who consume alcohol do so with full information as to the possible consequences in the enumerated circumstances. The patron is obviously free to ignore the warning. In sum, we find that the legislative scheme is not so pervasive that it has completely occupied the field thereby impliedly preempting the ordinance.

INCONSISTENT WITH GENERAL LAW
Having thus far found that the ordinance has been neither expressly nor impliedly preempted by state law, our final task is to determine whether, under article VIII, section 1(g), Florida Constitution (1968), the County, pursuant to its charter, has enacted an ordinance which is inconsistent with general law.[3]Board of Trustees v. Dulje. If it has enacted such an inconsistent ordinance, the ordinance must be declared null and void.
An ordinance is inconsistent with general law where it is "contradictory in the sense of legislative provisions which cannot coexist." State ex rel. Dade County v. Brautigam, 224 So.2d 688 (Fla. 1969) (construing an ordinance concerning cigarette taxes). The Association has cited no law to us, nor have we found any, which can be construed as incapable of coexisting with the ordinance we review, and therefore inconsistent. If anything, the requirement of a health warning sign shows a vendor's concern for the health and well-being of the clientele. Compare §§ 561.701-706, Fla. *592 Stat. (1989) (the Responsible Vendor's Act). The Responsible Vendor's Act provides for a voluntary program which does have a sign requirement as a precondition to certification, but the sign required there merely warns that underage patrons who attempt to buy alcohol and those who use controlled substances illegally on the premises may be subject to ejectment. The Association warns that in the future the legislature could impose a different sign-posting requirement (or a requirement that no signs be posted at all) within its pervasive regulatory scheme which would result in a conflict with the ordinance before us. That argument is unpersuasive because it suggests that we speculate on future legislation. We decline to do so. We find that the ordinance is not inconsistent with general law. Thus, the ordinance is valid as a proper exercise of the County's broad, residual power of self-government granted it by article VIII, section 1(g) of the state constitution.
Although not necessary to our holding, we take note of section 125.01, Florida Statutes (1991), the general law granting certain powers of self-government to counties which do not operate under a charter. This statute, implementing article VIII, section 1(f) of the Florida constitution (non-charter government), describes the more limited powers of self-government enjoyed by such counties. Speer v. Olson, 367 So.2d 207 (Fla. 1978). See generally Wolff, Home Rule in Florida: A Critical Appraisal, XIX Stetson L.Rev. 853, 881 (1990); Sparkman, The History and Status of Local Government Powers in Florida, XXV U.Fla.L.Rev. 271 (1973); Note, Charter County Government in Florida: Past Litigation and Future Proposals, XXXIII U.Fla.L.Rev. 505 (1981). Under this more limited "home rule" power, subsection (1)(o) provides that a non-chartered county may "establish and enforce regulations for the sale of alcoholic beverages in the unincorporated areas of the county pursuant to general law," and, subsection (1)(w) allows the non-chartered county to "exercise all powers and privileges not specifically prohibited by law." It is clear, then, that even if we were reviewing this ordinance in a case where it had been enacted by a non-chartered county, we would reach the same result. This would be so because there is nothing in section 125.01, or elsewhere in our statutes, prohibiting a non-chartered county from enacting such a health warning ordinance under the powers of self-government granted to it by the legislature. It would not be reasonable to hold that the ordinance would be valid under article VIII, section 1(f) (non-charter government) and its implementing statute, section 125.01, but not valid under the broader power of self-government pursuant to article VIII, section 1(g) (charter government). This analysis of article VIII, section 1(f) and Florida statute section 125.01 only serves to underscore the conclusion reached under the analysis presented earlier in this opinion.
In sum, we find no constitutional or legislative obstacle to this ordinance. Accordingly, we reverse the final summary judgment entered in favor of the Association and remand with instructions to enter a final summary judgment in favor of the County.
FRANK and PARKER, JJ., concur.
NOTES
[1] The three-prong test of Florida Home Builders is:

1. A substantial number of the Association's members, although not necessarily a majority, are substantially affected by the challenged rule;
2. The subject matter of the rule is within the association's general scope of interest and activity; and
3. The relief requested is the type appropriate for a trade association to receive on behalf of its members.
See also Warth v. Seldin, 422 U.S. 490, 95 S.Ct. 2197, 2211-12, 45 L.Ed.2d 343 (1975), which provides that the association must allege that its members or any one of them are suffering immediate or threatened injury of the kind comprising a justiciable issue had the members themselves brought suit and that the nature of the issue does not make the individual participation of each association member indispensable to a proper resolution of the case.
[2] Section 381.061, Florida Statutes (1989), has been repealed. Ch. 91-297, § 58, Laws of Fla. Its substantive provisions were transferred to new section 381.0072 titled "Food protection" in a general reorganization of this chapter and the duties of the Department of Health and Rehabilitative Services relating to the public health.
[3] Article VIII, section 1(g), of the Florida Constitution provides:

(g) CHARTER GOVERNMENT. Counties operating under county charters shall have all powers of local self-government not inconsistent with general law, or with special law approved by vote of the electors. The governing body of a county operating under a charter may enact county ordinances not inconsistent with general law. The charter shall provide which shall prevail in the event of conflict between county and municipal ordinances.
This section, which first appeared in the new Florida Constitution of 1968, "provides for the broadest extent of county self-government or `home rule' as it is commonly described." Art. VIII, § 1(g), Fla. Const., D'Alemberte commentary, reprinted in 26A Fla. Stat. Ann. 266, 271 (West 1970).