# Third District Court of Appeal

## State of Florida

Opinion filed December 13, 2017.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D16-1849
Lower Tribunal No. 98-7760
_____

**Fraternal Order of Police, Miami Lodge No. 20,**
Appellant,

vs.

**City of Miami,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Rosa I. Rodriguez, Judge.

Klausner, Kaufman, Jensen & Levinson, and Robert D. Klausner and Paul A. Daragjati (Plantation), for appellant.

Victoria Méndez, City Attorney, and Kerri L. McNulty, Assistant City Attorney, for appellee.

Before ROTHENBERG, C.J., and SALTER and LINDSEY, JJ.

ROTHENBERG, C.J.

The Fraternal Order of Police, etc. ("the FOP") appeals from the trial court's entry of a final order determining that the FOP lacks standing to seek damages against the City of Miami ("the City") on behalf of some of the FOP's members. Based on our review of the record on appeal and the relevant case law, we agree with the trial court's determination that the FOP lacks standing to pursue damages on behalf of its members because the determination of damages will require the individual participation of the affected FOP members.

## BACKGROUND

This appeal concerns a promotional exam for the position of police sergeant administered by the City in 1994. In 1996, the FOP filed a complaint, and ultimately a second amended complaint, seeking declaratory relief, injunctive relief, and damages against the City, alleging that the oral portion of the exam was unlawful. Following discovery, the trial court entered an order bifurcating the liability and damages phases of the litigation. After conducting a bench trial on liability, the trial court entered a partial final declaratory judgment in 2007 in favor of the FOP, declaring the oral portion of the exam invalid.

Thereafter, the City sought clarification as to the FOP's associational standing to recover damages on behalf of its individually affected members. The trial court entered an order in 2008 finding that, although the FOP may possess associational standing to seek declaratory, injunctive, or other prospective relief for

2

its members, it lacks associational standing to recover damages on behalf of the members affected by the flawed promotion examination. Specifically, the trial court found that because the determination of the damages sought by the FOP will require extensive and individualized discovery to determine whether and to what extent each individual member was damaged, the FOP does not have standing to recover damages on their behalf.

Five years after the trial court entered its order finding that the FOP lacked standing to pursue damages on behalf of its affected members, the FOP filed a motion for reconsideration of that order, but failed to set the motion for a hearing. Three years later, at the City's prompting, the motion was heard and denied. The FOP now seeks a reversal of the trial court's determination that it lacks standing to seek damages in its representational capacity on behalf of its members.

## ANALYSIS

"Generally, the determination of whether a plaintiff has standing is a legal issue subject to de novo appellate review. . . . To the extent that the trial court's standing determination involves factual findings, we uphold such findings only if supported by competent, substantial evidence." Citibank, N.A. v. Olsak, 208 So. 3d 227, 229 (Fla. 3d DCA 2016) (citations omitted).

At the outset, we note that this case appears to present an issue of first impression. Neither of the parties on appeal have cited to any Florida case that

3

directly addresses whether and in what circumstances a union has standing to seek damages on behalf of its members, nor have we found such a case. However, based on our review of other union standing cases and related case law in the context of associational standing, we conclude that a union does not have standing to seek damages solely on behalf of its members where the union's claims for damages require individualized participation by and proof from its members.

## 1. The Federal Associational Standing Doctrine

Although the specific issue before us has not been resolved in Florida, it has been addressed in a number of cases before the federal courts. While we acknowledge that these federal authorities are not binding, we nevertheless find them to be persuasive and compatible with Florida law. Accordingly, our analysis begins with the development and application of associational standing in federal case law before turning to our analysis of Florida law.

The specific test that governs when an association has standing in its representational capacity to bring suit on behalf of its members can be traced to Hunt v. Washington State Apple Advertising Commission, 432 U.S. 333 (1977). In Hunt, the United States Supreme Court held that an association may have standing to bring a lawsuit on behalf of its members in its representational capacity, even if it has suffered no direct injury, so long as three requirements are met: "(a) its members would otherwise have standing to sue in their own right; (b) the interests

4

it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Id. at 343. As to the third prong of the Hunt test, which is the focus of our analysis in the present case, the Court elaborated:

> [W]hether an association has standing to invoke the court's remedial powers on behalf of its members depends in substantial measure on the nature of the relief sought. If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured. Indeed, in all cases in which we have expressly recognized standing in associations to represent their members, the relief sought has been of this kind.

Id. (quoting Warth v. Seldin, 422 U.S. 490, 515 (1975)). The Court concluded that the Washington State Apple Advertising Commission met each of the three associational standing requirements, and although the Washington State Apple Advertising Commission was a state agency, rather than a traditional voluntary membership organization, it was nevertheless permitted to seek declaratory and injunctive relief in its representational capacity on behalf of the apple growers and dealers who formed its constituency.

Since the United States Supreme Court's decision in Hunt, the apple has not fallen far from the tree. Nearly a decade later, the Hunt test was applied when a labor union sought to file suit in its representational capacity against the United States Department of Labor. Int'l Union, United Auto., Aerospace & Agric.

5

Implement Workers of Am. v. Brock, 477 U.S. 274, 290 (1986). Although it suffered no injury, the union sought injunctive and declaratory relief on behalf of its members, who were denied certain unemployment benefits. After carefully examining the type of relief the union sought, the Court found that the union had standing in its representational capacity because the lawsuit did not actually require the individual participation of union members. Instead, the case "raise[d] a pure question of law: whether the Secretary properly interpreted the Trade Act's [trade readjustment allowance] eligibility provisions." Id. at 287. In so holding, the Court reaffirmed the established limitation on associational standing: a labor union cannot seek damages on behalf of its members where the alleged injury "is peculiar to the individual member concerned, and both the fact and extent of injury would require individualized proof." Id. at 287 (quoting Warth, 422 U.S. at 515-16).[1]

One decade after International Union, the United States Supreme Court reiterated the general rule that associational standing is precluded when a union "seeks damages on behalf of its members." United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc., 517 U.S. 544, 554 (1996). The Court went on to find, however, that the third prong of the Hunt test is prudential, unlike the

---

[1] Although some individualized relief was allegedly sought in International Union, the Court noted that such claims were actually left to the state authorities, which would specifically consider the unique facts of each member's claim before any member could receive benefits allegedly due. Int'l Union, 447 U.S. at 288.

first two prongs of the <u>Hunt</u> test, which are constitutional. Thus, the Court concluded that Congress may abrogate the requirements of the third prong of the <u>Hunt</u> test by passing a statute that expressly provides unions with the authority to recover for its members' individualized claims.[2] However, the United States Supreme Court specifically noted that the value of the third prong of the <u>Hunt</u> test is not somehow diminished by the fact that its requirements are not constitutional. <u>Id.</u> at 556 (stating, among other things, that the third prong may well "guard against the hazard of litigating a case to the damages stage only to find the plaintiff lacking detailed records or the evidence necessary to show the harm with sufficient specificity" and "hedge against any risk that the damages recovered by the association will fail to find their way into the pockets of the members on whose behalf injury is claimed").

Notwithstanding cases where Congress expressly permitted associations to pursue individualized claims on behalf of their members, several federal courts since <u>United Food</u> have honored the general prudential requirements of the third prong of the <u>Hunt</u> test. They have reaffirmed time and again that an association, (a word broadly construed to cover entities such as trade associations, non-profit associations, certain state agencies, and unions), cannot invoke the doctrine of associational standing in order to seek damages on behalf of its members, whose

_____

[2] We note that the instant case does not involve a similar statutory right to recover damages on behalf of union members.

7

claims depend upon individualized proof. Connecticut State Dental Ass'n v. Anthem Health Plans, Inc., 591 F.3d 1337, 1354 (11th Cir. 2009) ("Although [the association] seeks both declaratory and injunctive relief, which are normally appropriate relief for associational standing, it also seeks compensatory and punitive damages on behalf of its members, which will require individualized proof of harm. Thus, [the association] could not establish all the requirements for associational standing."); Bano v. Union Carbide Corp., 361 F.3d 696, 714 (2d Cir. 2004) ("We know of no Supreme Court or federal court of appeals ruling that an association has standing to pursue damages claims on behalf of its members."); Pennsylvania Psychiatric Soc'y v. Green Spring Health Servs., Inc., 280 F.3d 278, 284 (3d Cir. 2002) ("Had the [association] continued to press its claims for damages on appeal, dismissal under Rule 12(b)(6) would be entirely appropriate."); BankUnited, N.A. v. Milliman, Inc., 2016 WL 1321559, at *2 (M.D. Fla. Apr. 5, 2016); Black Farmers & Agriculturists Ass'n v. Veneman, 2005 WL 711821, at *2 (D.D.C. Mar. 29, 2005) ("There can be no question that 'any award of monetary compensation would require the participation of individual members in the lawsuit.' . . . It is clear that [the association] lacks standing to sue for damages on behalf of its members.") (citing Air Transp. Ass'n of Am. v. Reno, 80 F.3d 477, 483 (D.C. Cir. 1996)); Wein v. Am. Huts, Inc., 313 F. Supp. 2d 1356, 1360-61 (S.D. Fla. 2004) ("While [the association] has sufficiently alleged facts to

establish that it has standing to pursue declaratory and injunctive relief on behalf of its members, [it] lacks standing to bring its claims for compensatory damages, damages for mental suffering, anguish, loss of dignity, and any other intangible injuries, punitive damages before this Court.") (internal quotation omitted).

Accordingly, based on these abundant federal authorities, we conclude that under federal law, generally, a union may not file suit solely in its representational capacity to seek damages on behalf of its members if individualized proof from the union's members would be required in the litigation.

## 2. A Union's Standing to Sue in its Representational Capacity in Florida

Next, we consider the law in Florida. Florida has not adopted the <u>Hunt</u> test for associational standing. However, as demonstrated below, its "modified" associational standing doctrine contains requirements that closely resemble its federal counterpart, the <u>Hunt</u> test. Similarly, the few cases dealing with a union's standing to sue in its representational capacity have only permitted unions to seek declaratory or injunctive relief, and those claims did not require individualized participation from the unions' members.

Florida's "modified" associational standing doctrine applies primarily in the context of an association's rule challenges under section 120.56, Florida Statutes, where the association "is acting solely as the representative of its members." <u>Fla. Home Builders Ass'n v. Dep't of Labor & Emp't Sec.</u>, 412 So. 2d 351, 353 (Fla.

9

1982); see also Palm Point Prop. Owners' Ass'n of Charlotte Cty., Inc. v. Pisarski, 626 So. 2d 195, 197 (Fla. 1993) (stating that "our recognition of associational standing in the chapter 120 context was not a blanket adoption of the doctrine"). But see Hillsborough Cty. v. Fla. Rest. Ass'n, 603 So. 2d 587, 588 (Fla. 2d DCA 1992) (holding that an association has standing to seek injunctive and declaratory relief to challenge the enactment of a county ordinance on the ground that it is unconstitutional).[3] In order to initiate a rule challenge in its representational capacity on behalf of its members, an association must meet the requirements of the following test enunciated in Florida Home Builders:

> [A]n association must demonstrate that a substantial number of its members, although not necessarily a majority, are "substantially affected" by the challenged rule. Further, the subject matter of the rule must be within the association's general scope of interest and activity, and **the relief requested must be of the type appropriate for a trade association to receive on behalf of its members.**

Fla. Home Builders, 412 So. 2d at 353-54 (emphasis added). Although we recognize that the modified associational standing doctrine relied on in Florida Home Builders does not apply in all contexts, we find that it is nevertheless instructive because its precepts mandate that an organization does not have

---

[3] We note that the Second District Court of Appeal, when deciding Hillsborough County, did not have the benefit of the Florida Supreme Court's limitation on the modified associational standing doctrine, as handed down in Palm Point. However, in Hillsborough County, the plaintiff requested injunctive and declaratory relief, and its holding does not obstruct our analysis. Hillsborough Cty., 603 So. 2d at 588.

associational standing in Florida if the relief requested is not "of the type appropriate for a trade association to receive on behalf of its members." Id. at 354. We specifically note that immediately after articulating the modified associational standing test in Florida Home Builders, the Florida Supreme Court clarified that "the only issue to be resolved in a section 120.56(1) proceeding is whether an agency rule is valid," and noted that a section 120.56(1) proceeding "**does not involve association or individual claims for money damages**." Id. at 354 (emphasis added). This quote suggests that if the proceeding had involved individual claims for money damages, the Florida Supreme Court would have found that the organization lacked associational standing to pursue damages on behalf of its members.

The Florida Supreme Court's ruling in Florida Home Builders highlights the United States Supreme Court's comment in United Food, wherein the United States Supreme Court stated that one of the important purposes achieved by limiting associational standing to those circumstances where individualized participation of members in the litigation is not required is the protection such a limitation provides "against any risk that the damages recovered by the association will fail to find their way into the pockets of the members on whose behalf injury is claimed." United Food, 517 U.S. at 556. Accordingly, while not identical, it is apparent that the Hunt test and Florida's modified associational standing doctrine

11

are closely aligned when it comes to the limitation of associational standing in cases where damages are sought.

Outside of the context of Florida's modified associational standing doctrine, there are only a few cases in Florida where a union attempted to file suit in its representational capacity. However, these cases have dealt only with injunctive or declaratory relief. See, e.g. Fredericks v. School Bd. of Monroe Cty, 307 So. 2d 463, 465 (Fla. 1975) (holding that a labor organization has standing to file a lawsuit on behalf of its members to compel a school board to exhaust its adopted grievance procedure); Cannery, Citrus, Drivers, Warehousemen, & Allied Emps. of Local 444 v. Winter Haven Hosp., 279 So. 2d 23, 27 (Fla. 1973) (holding that a labor organization has standing, under the facts of that case, "to seek injunctive relief against asserted employer coercion" on behalf of the employees it represents).

In the final analysis, we find that in both federal case law and Florida case law, the results are nearly uniform. In both contexts, if a union seeks and obtains injunctive or declaratory relief, it will often immediately "inure to the benefit of those members of the association actually injured," and individual participation will not be required of the union's members. See Warth v. Seldin, 422 U.S. 490, 515 (1975). However, when a union seeks damages on behalf of its members, rather than automatically inuring to the benefit of those members who suffer from

12

an individualized injury, damages claims are often neither "common to the entire membership, nor shared by all in equal degree," and the injuries are often "peculiar to the individual member concerned," with "both the fact and extent of injury" requiring individualized proof. Id. at 515-516.

Thus, while an association may have standing to seek injunctive or declaratory relief on behalf of its members due to the automatic application of the relief to its injured members, an association does not have standing to seek damages on behalf of its members where individual participation from the association's injured members is "indispensable to proper resolution of the cause." Id. at 511. In short, disputes about claims for individualized damages are typically not "properly resolved in a group context." Hunt, 432 U.S. at 344; see Fla. Home Builders, 412 So. 2d at 353-54.[4] Accordingly, we find, consistent with both federal law and Florida law, that it is generally inappropriate for a union to seek damages solely in its representational capacity on behalf of its members when the calculation of those damages will depend on individualized participation from the union members.[5]

_____

[4] We decline to address situations where the association has suffered a direct injury or received an assignment of rights from its members because neither factual situation has occurred in the instant case.

[5] Our conclusion finds further support among the fundamental principles of standing. The concept of standing contains the "requirement that the claim be brought by or on behalf of one who is recognized in the law as a 'real party in interest.'" Kumar Corp. v. Nopal Lines, Ltd., 462 So. 2d 1178, 1183 (Fla. 3d DCA 1985). The "real party in interest" is "the person in whom rests, by substantive law,

**3. The FOP Lacks Standing to Seek Damages on Behalf of its Members**

Our application of this principle to the instant case leads to a clear result. The trial court correctly found that the FOP cannot seek as a remedy damages for its members, as "[t]he determination of these damages will require extensive and individualized discovery to determine whether and to what extent each individual member was damaged" by the unlawful promotional exam. Some of its members were later promoted at different times, some were never promoted, and some might not have scored high enough to receive a promotion even if the oral examination portion of the test had not been flawed. Thus, the damages suffered by individuals who were not promoted according to the now invalid promotional exam are by no means uniform, and determining entitlement to such damages will be a fact-dependent process. Accordingly, we agree with the trial court that the FOP lacks standing to seek damages on behalf of these differently situated members, from

the claim sought to be enforced." Id. (citation and quotation omitted); see also Fla. R. Civ. P. 1.210; Alterra Healthcare Corp. v. Estate of Shelley, 827 So. 2d 936, 941 (Fla. 2002) ("Under traditional *jus tertii* jurisprudence, 'In the ordinary course, a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties.'") (citation omitted). The purpose behind the real party in interest rule is "to protect a defendant from facing a subsequent similar action brought by one not a party to the present proceeding and to ensure that any action taken to judgment will have its proper effect as res judicata." Kumar, 462 So. 2d at 1178 (quoting Prevor-Mayorsohn Caribbean, Inc. v. Puerto Rico Marine Mgmt., Inc., 620 F.2d 1, 4 (1st Cir.1980)). Our conclusion that a union does not have standing to seek damages on behalf of its members where their individualized participation is required coheres with these general standing principles.

whom individual participation in the damages portion of this litigation will be required.

## CONCLUSION

In summary, we hold that a union generally lacks standing to seek damages solely in its representational capacity on behalf of its members where their individualized participation in the litigation is required. Accordingly, because the FOP's members in this case would be required to participate in the litigation and prove the existence and extent of their damages stemming from the unlawful promotional exam, we find that, on these facts, the FOP lacks standing to pursue damages on behalf of its affected members. We also find the FOP's remaining arguments to be without merit, and we therefore decline to address them further.

Affirmed.