462 So.2d 1178 (1985)
KUMAR CORPORATION, Appellant,
v.
NOPAL LINES, LTD., Lorentzen Shipping Agencies, Inc., and S.E.L. Maduro (Florida), Inc., Appellees.
No. 83-2317.
District Court of Appeal of Florida, Third District.
January 15, 1985.
Rehearing Denied February 26, 1985.
*1180 Finley, Kumble, Wagner, Heine, Underberg, Manley & Casey and C. Randolph Coleman, Miami, for appellant.
Mitchell, Harris, Canning, Murray & Usich and C. Robert Murray, Jr.; Smathers & Thompson and Fernando S. Aran, Miami, for appellees.
Before HUBBART, DANIEL S. PEARSON and FERGUSON, JJ.
DANIEL S. PEARSON, Judge.
Kumar Corporation, the plaintiff below, appeals from a summary judgment entered in favor of all defendants on Kumar's suit to recover damages for the loss of certain cargo. The stated basis for the judgment was that Kumar had no legally cognizable interest in the cargo and was thus without standing to sue for its loss when the action was instituted, and that efforts to confer standing on Kumar, made after the claim was time barred under the Carriage of Goods by Sea Act, 46 U.S.C. §§ 1300-1315 (1982), did not serve to breathe life into Kumar's timely-filed suit.[1]
The operative and undisputed facts are these. Kumar Corporation is in the business of shipping electronic equipment to Latin America. One of its largest customers is Freddy Nava, a Venezuelan wholesaler. In late 1981, Nava told Kumar that he wanted to purchase 700 television sets and spare parts. Kumar and Nava agreed that Nava would not pay Kumar until Nava actually sold the merchandise in Venezuela.
Thereafter, Kumar obtained the televisions and spare parts from its supplier, received them in its Miami warehouse, loaded them on a trailer, and on February 4, 1982, delivered the trailer to freight handler S.E.L. Maduro (Florida), Inc., one of the defendants, at Maduro's lot at the Port of Miami. The shipping documents reflected that the goods were sold by Kumar to Nava for $144,417.00, C.I.F. Maracaibo (Venezuela).
On February 16, 1982, a Maduro employee discovered that the trailer was missing from the Maduro lot. Sometime later, the trailer was found elsewhere, abandoned and empty.
Well within a year of these events, Kumar sued Maduro, along with Nopal Lines, Ltd. and Lorentzen Shipping Agency, Inc., the carrier and the carrier's shipping agent, respectively. The defendants challenged Kumar's standing to sue and moved for summary judgment.
*1181 The defendants' position is, as it was below, that under Section 672.320, Florida Statutes (1981), the term C.I.F., or its equivalent, required Kumar, the seller, to perform certain obligations with respect to the goods, including, inter alia, placing the goods in possession of the carrier, and that when these obligations were properly performed, as the defendants contend they were, the risk of loss or damage to the goods passed to Nava, the buyer,[2] and that, therefore, since Kumar could not have suffered the loss, it had no standing to sue.
Kumar concedes that an ordinary incident of a C.I.F. contract is that, upon tender of the required documents, the buyer must pay the agreed price without awaiting the arrival of the goods. It argues, however, that its agreement with Nava to postpone Nava's obligation to pay for the goods until they were actually sold in Venezuela modified this ordinary incident and, in turn, modified the ordinary consequence of the C.I.F. contract (that the risk of loss shifts to the buyer) so as to leave the risk of loss on the seller. Kumar's second position is that if the term C.I.F. controls and thus the risk of loss shifted to Nava, Kumar nonetheless brought suit on Nava's behalf or as Nava's assignee and thereby had standing. In support of this latter position, Kumar filed two affidavits executed by Freddy Nava. The first, executed by Nava on July 6, 1983, and filed before the summary judgment hearing, stated in pertinent part:
"I hereby ratify and endorse the action that Kumar Corporation has taken by filing and prosecuting the lawsuit referenced ... above, appoint Kumar Corporation my agent, trustee and representative of any interest I may have in that lawsuit or any other cause of action I may have against the Defendants in that lawsuit, and hereby assign to Kumar Corporation all right, title and interest that I may have against the Defendants named in that lawsuit or any other parties for any other cause of action arising out of the loss, disappearance or theft of the goods. I authorize Kumar Corporation, its officers, directors, agents or attorneys to proceed in whatever manner, method or practice they deem appropriate in pursuing the action(s) in this matter on my behalf."
The second, executed by Nava on July 7, 1983, and filed at the summary judgment *1182 hearing, was expressly intended to supplement the first affidavit. It recited in pertinent part:
"2. Mr. Lionel Harms and Mr. Curt Harms, from Kumar Corp., notified me in February, 1982, that the trailer containing the television sets I ordered from them had been stolen. At that time, in February 1982, I authorized Kumar Corp., directly to Lionel Harms, to take whatever action they deemed appropriate to pursue any rights that I had against any persons regarding the loss of that cargo, including negotiations for settlement, or the institution of legal action against any party including the Defendants in the action referenced in paragraph 1 above.
"3. I was aware at all times of the actions taken by Kumar Corp. in pursuing the claim against Nopal Lines, Ltd., Lorentzen Shipping Agency, Inc., and S.E.L. Maduro (Florida), Inc., and was informed of each action taken on a timely basis by Mr. Lionel Harms. I agree with and ratify each action taken by Kumar in the prosecution of its claim against those Defendants and did agree with and ratify each action taken at the time taken, or shortly after the time each action was taken."
The trial court rejected Kumar's arguments and granted the defendants' motion:
"[O]nce the Plaintiff, KUMAR CORPORATION, delivered possession of the subject trailer to the Defendant, S.E.L. MADURO (FLORIDA), INC., title to the television sets and spare parts passed to the consignee, Freddy Nava, and the Plaintiff, KUMAR CORPORATION, no longer had any legal interest in said shipment. More particularly, the Court finds that at the time of instituting the above captioned proceedings the Plaintiff, KUMAR CORPORATION, had no standing to bring a claim for cargo loss emanating out of the subject shipment; nor was standing subsequently conferred upon the Plaintiff, KUMAR CORPORATION, by the consignee, Freddy Nava, vis-a-vis Mr. Nava's July 6, 1983 Affidavit inasmuch as Mr. Nava's claim, as of the date of the execution of his Affidavit, was time barred under the Carriage of Goods by Sea Act."
We reverse the summary judgment and the consequent order taxing costs against Kumar. We conclude that under any view of the facts, Kumar had standing to sue. If Kumar's agreement with Nava concerning the time of payment (or Kumar's failure to procure a policy of insurance) had the effect of modifying the C.I.F. terms so as to prevent the risk of loss from passing to Nava, then, of course, Kumar had standing to sue the appellees by virtue of its agreement with Nava. If, on the other hand, as the trial court concluded, the risk of loss had passed to Nava, then Kumar, by virtue of having borne the loss in Nava's stead, had standing to sue as Nava's subrogee or, subrogation aside, as Nava's agent, its action having been later ratified by Nava.
We begin with some observations about the relationship between the overlapping but theoretically separate concepts of "standing" and "real party in interest." See 6 C. Wright & A. Miller, Federal Practice & Procedure, § 1542 (1971). In its broadest sense, standing is no more than having, or representing one who has, "a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy."[3]Sierra Club v. Morton, 405 U.S. 727, 731, 92 S.Ct. 1361, 1364, 31 L.Ed.2d 636, 641 (1972). See Gieger v. Sun First National Bank of Orlando, 427 So.2d 815 (Fla. 5th DCA 1983); Argonaut Insurance Co. v. Commercial Standard Insurance Co., 380 So.2d 1066 (Fla. 2d *1183 DCA), rev. denied, 389 So.2d 1108 (Fla. 1980). Under this definition, it can hardly be doubted that Kumar, which under its agreement with Nava was not to be paid until Nava actually sold the merchandise in Venezuela and would thus suffer a loss of $144,417.00 if its suit does not succeed, has a sufficient stake in the outcome of an otherwise justiciable controversy so as to have standing.[4]See Levatino Co. v. M/S Helvig Torm, 295 F. Supp. 725 (S.D.N.Y. 1968).
However, standing encompasses not only this "sufficient stake" definition, but the at least equally-important requirement that the claim be brought by or on behalf of one who is recognized in the law as a "real party in interest," that is, "the person in whom rests, by substantive law, the claim sought to be enforced," Author's Comment to Fla.R.Civ.P. 1.210, 30 Fla. Stat. Ann. 304, 306-07 (1967); see 3A J. Moore, Moore's Federal Practice, ¶ 17.02 (2d ed. 1984). The basic purpose of rules requiring that every action be prosecuted by or on behalf of the real party in interest is merely "to protect a defendant from facing a subsequent similar action brought by one not a party to the present proceeding and to ensure that any action taken to judgment will have its proper effect as res judicata... ." Prevor-Mayorsohn Caribbean, Inc. v. Puerto Rico Marine Management, Inc., 620 F.2d 1, 4 (1st Cir.1980). The Florida real party in interest rule, Fla. R.Civ.P. 1.210(a), permits an action to be prosecuted in the name of someone other than, but acting for, the real party in interest.[5]See Durrant v. Dayton, 396 So.2d 1225 (Fla. 4th DCA 1981); 39 Fla.Jur.2d Parties, § 9 (1982); see also Thomas v. Martin, 100 Fla. 146, 129 So. 602 (1930) (real party in interest may bring suit in name of nominal party); Holyoke Mutual Insurance Co. v. Concrete Equipment, Inc., 394 So.2d 193 (Fla. 3d DCA), rev. denied, 402 So.2d 609 (Fla. 1981). Thus, where a plaintiff is either the real party in interest or is maintaining the action on behalf of the real party in interest, its action cannot be terminated on the ground that it lacks standing.
Kumar's argument that it is the real party in interest proceeds, as we have said, from the premise that its agreement to postpone Nava's obligation to pay for the goods modified the ordinary consequence of the C.I.F. contract that the risk of loss shifts to the buyer. A C.I.F. contract is a recognized and established form of contract, the incidents of which are well known. Thus, if a buyer and seller adopt such a contract, "they will be presumed, in the absence of any express term to the contrary, to have adopted all the normal incidents of that type of contract," D.M. Day, The Law of International Trade, 4 (1981), one of which is that the buyer, not the seller, bears the risk of loss when the goods are delivered to the carrier and the seller's other contractual obligations are fulfilled. D.M. Day, supra, at 77. A C.I.F. contract is not a contract "that goods shall arrive, but a contract to ship goods complying with the contract of sale, to obtain, unless the contract otherwise provides, the ordinary contract of carriage to the place of destination, and the ordinary contract of insurance of the goods on that voyage, and to tender these documents against payment of the contract price." C. Schmitthoff, Schmitthoff's Export Trade, The Law and Practice of International Trade, 26-27 (7th ed. 1980).
It is clear, however, that parties may vary the terms of a C.I.F. contract to meet their own requirements. D.M. Day, supra, at 55. But where the agreed-upon variation is such that it removes a vital ingredient of a C.I.F. contract, then the *1184 contract ceases to be a C.I.F. contract. D.M. Day, supra, at 55. Thus, "if according to the intention of the parties the actual delivery of the goods [to the buyer] is an essential condition of performance, the contract is not a c.i.f. contract." C. Schmitthoff, supra, at 39.
In the present case, Kumar and Nava agreed to payment upon Nava's sale of the goods in Venezuela. Whether they intended that the arrival of the goods in Venezuela was to be a condition for the payment of the price (thereby negating an essential ingredient of the C.I.F. contract) or intended that if the goods did not arrive, payment would nonetheless be made on tender of the documents on the date when the goods would normally have arrived, see U.C.C. § 2-321(3) (1977) (consistent with the nature of a C.I.F. contract), is not clear.[6] What is clear is that the use of the term C.I.F. does not ipso facto make the contract a C.I.F. contract if the contract has been altered in a manner that is repugnant to the very nature of a C.I.F. contract. See Steuber Co. v. Hercules, Inc., 646 F.2d 1093 (5th Cir.1981) (agreement altering C.I.F. contract "must control over the general reference to C.I.F. contained on the face of the document"). Therefore, because the record before us does not (as it must for summary judgment purposes) conclusively show that the contract remained a true C.I.F. contract despite the agreement between Kumar and Nava concerning the payment for the goods, it was improper for the trial court to conclude as a matter of law that the risk of loss passed to Nava when Kumar delivered the goods to the shipper.[7]
But even assuming, arguendo, that we were to conclude, as did the trial court, that the risk of loss passed to Nava merely by virtue of the label C.I.F. on the contract, Kumar must still prevail. Under the C.I.F. contract, Kumar was obliged to procure insurance, and by not doing so, acted, intentionally or unintentionally, as the insurer of the shipment. As the insurer of the shipment, Kumar was obliged to pay Nava, the risk bearer, for the loss when the goods were stolen. Being legally obliged to pay Nava's loss, Kumar would thus be subrogated to Nava's claims against the appellees.[8]See Underwriters at Lloyds v. City of Lauderdale Lakes, 382 So.2d 702 (Fla. 1980); Trueman Fertilizer Co. v. Allison, 81 So.2d 734 (Fla. 1955); Lovingood v. Butler Const. Co., 100 Fla. 1252, 131 So. 126 (1930); Meyer v. Florida Home Finders, 90 Fla. 128, 105 So. 267 (1925); Boley v. Daniel, 72 Fla. 121, 72 So. 644 (1916); Price v. Scharps, 405 So.2d 1043 (Fla. 3d DCA 1981); Furlong v. Leybourne, 138 So.2d 352 (Fla. 3d DCA 1962); Ulery v. Asphalt Paving, Inc., 119 So.2d 432 (Fla. 1st DCA 1960). Since a subrogee is the real party in interest and may sue in its own name, Holyoke Mutual Insurance Co. v. Concrete Equipment, Inc., 394 So.2d 193, Kumar would have standing to sue under this theory.
Finally, Kumar contends that if, arguendo, Nava was the real party in *1185 interest, then Kumar asserted the claim as Nava's agent and on Nava's behalf, and that the record indisputably reflects Nava's ratification of Kumar's action.[9] As we have already noted, the Florida real party in interest rule is permissive only, and a nominal party, such as an agent, may bring suit in its own name for the benefit of the real party in interest.[10]See Durrant v. Dayton, 396 So.2d 1225 (Fla. 4th DCA 1981); 39 Fla.Jur.2d Parties, § 9 (1982). See also Holyoke Mutual Insurance Co. v. Concrete Equipment, Inc., 394 So.2d 193. Kumar contends, and we agree, that Nava's affidavits unequivocally show that Nava ratified and endorsed Kumar's action in bringing suit on Nava's behalf. It is a fundamental proposition of the law of agency that a principal may subsequently ratify its agent's act, even if originally unauthorized, and such ratification relates back and supplies the original authority.[11]See Houseman v. The Cargo Of The Schooner North Carolina, 40 U.S. (15 Pet.) 40, 10 L.Ed. 653 (1841); 2A C.J.S. Agency, § 104 (1972); 2 Fla.Jur.2d Agency & Employment, § 50 (1977).
In sum, we are compelled to conclude that under any view of the record in this case, Kumar had standing to sue when it instituted the action against the appellees. At that time, Kumar was either the real party in interest (as initial risk bearer or subrogee of Nava) or sued, as it had a right to do, on Nava's behalf as Nava's agent, which action was ratified by Nava. Because suit was timely filed by a party with standing to sue, the entry of summary judgment on the ground that the suit was limitations-barred was error.
Reversed and remanded for further proceedings.
NOTES
[1] Title 46 U.S.C. § 1303(6), a provision of the Carriage of Goods by Sea Act (C.O.G.S.A.), limits the time within which to file suit to one year from the date cargo was delivered or should have been delivered to its final destination. Arrow Beef Corp. v. South Atlantic & Caribbean Lines, Inc., 280 So.2d 43 (Fla. 3d DCA 1973); Coquette Originals, Inc. v. Canadian Gulf Line of Florida, 240 So.2d 847 (Fla. 3d DCA 1970).
[2] Section 672.320(2), Florida Statutes (1981), provides:

"(2) Unless otherwise agreed and even though used only in connection with the stated price and destination, the term C.I.F. destination or its equivalent requires the seller at his own expense and risk to:
"(a) Put the goods into the possession of a carrier at the port for shipment and obtain a negotiable bill or bills of lading covering the entire transportation to the named destination; and
"(b) Load the goods and obtain a receipt from the carrier (which may be contained in the bill of lading) showing that the freight has been paid or provided for; and
"(c) Obtain a policy or certificate of insurance, including any war risk insurance, of a kind and on terms then current at the port of shipment in the usual amount, in the currency of the contract, shown to cover the same goods covered by the bill of lading and providing for payment of loss to the order of the buyer or for the account of whom it may concern; but the seller may add to the price the amount of the premium for any such war risk insurance; and
"(d) Prepare an invoice of the goods and procure any other documents required to effect shipment or to comply with the contract; and
"(e) Forward and tender with commercial promptness all the documents in due form and with any indorsement necessary to perfect the buyer's rights."
Comment 1 to the parallel section of the Uniform Commercial Code, U.C.C. § 2-320, 1A U.L.A. 97, 98 (Master ed. 1976), states:
"The C.I.F. contract is not a destination but a shipment contract with risk of subsequent loss or damage to the goods passing to the buyer upon shipment if the seller has properly performed all his obligations with respect to the goods. Delivery to the carrier is delivery to the buyer for purposes of risk and `title'. Delivery of possession of the goods is accomplished by delivery of the bill of lading, and upon tender of the required documents the buyer must pay the agreed price without awaiting the arrival of the goods and if they have been lost or damaged after proper shipment he must seek his remedy against the carrier or insurer. The buyer has no right of inspection prior to payment or acceptance of the documents."
[3] In this sense, standing is treated as "an element of the constitutional requirement that there be a `case or controversy'; when thus applied, it acts as a limitation on the subject matter jurisdiction of the federal courts. In this context, objections to standing, unlike [real party in interest] objections, cannot be waived and may be raised by a federal court sua sponte." 6 C. Wright & A. Miller, supra § 1542, at 642-43 (footnotes omitted). The quoted statement is, of course, equally applicable to Florida courts.
[4] The stake need not be an economic one. Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970).
[5] In comparison, the federal rule, Fed.R.Civ.P. 17(a), mandates that actions be prosecuted in the name of the real party in interest, but allows for later joinder, or substitution of, or ratification by, the real party in interest in cases where the action has been instituted by other than the real party in interest.
[6] There is no indication in this record that the parties expressly agreed that Kumar rather than Nava would bear the risk of loss of the goods in transit. Their agreement that Nava would have the goods on consignment does not necessarily address the question of who bears the risk of loss of the goods in transit.
[7] The record does not reflect and the parties have not addressed the circumstances surrounding the failure of Kumar to procure insurance. The procurement of insurance is one of the requirements that a seller must fulfill as part of a C.I.F. contract. See § 672.320(2)(c), Fla. Stat. (1981). While parties are allowed to modify this requirement by an express agreement, it does not appear that one existed here. Kumar's general manager admitted that Nava did not instruct Kumar not to get insurance. It might well be argued that Kumar's failure to procure insurance vitiated the C.I.F. contract and kept the risk of loss from passing to Nava. Once again, this argument would make Kumar the real party in interest at the outset.
[8] It is inconsequential that Nava has never actually paid Kumar for the goods, and Kumar has never actually paid Nava for the loss of the goods. The right to be subrogated to Nava's claim arises by the debt to Nava being cancelled in fact and cannot depend on a formalistic exchange of checks in an equal amount between Nava and Kumar.
[9] Kumar also relied  we think unnecessarily  on Nava's assignment of his claim as shown by Nava's July 6, 1983, affidavit. Kumar contended that the assignment either related back as a matter of law to the time when suit was brought or, alternatively, that the supplemental affidavit of July 7, 1983, clearly shows that Nava had assigned the cause of action to Kumar at the time suit was first filed. The appellees countered that since the assignment was made after C.O.G.S.A.'s one-year statute of limitations had expired, Nava had nothing to assign, and there can be no relation back.

In our view, it simply does not matter to the disposition of this case whether Nava first assigned his claim to Kumar at the time Kumar brought suit or in July 1983, when the affidavit was executed. Nava was perfectly capable of assigning his claim, and the assignment was valid whenever made. Cf. Green v. Gould, 63 So.2d 327 (Fla. 1953) (where assignors were legally incapable of assigning claim, putative assignee's standing to sue cannot arise until valid assignment made). If the assignment occurred at the time that Kumar instituted the action, then Kumar, as assignee, was the real party in interest throughout this suit. See Spears v. West Coast Builders' Supply Co., 101 Fla. 980, 133 So. 97 (1931); Robinson v. Nix, 22 Fla. 321 (1886). On the other hand, if the assignment first occurred in July 1983, then the assignment merely had the effect of changing Kumar's capacity from an agent suing on behalf of Nava to Nava's assignee. A change of capacity, of course, does not constitute a new cause of action and relates back to the original filing. See Griffin v. Workman, 73 So.2d 844 (Fla. 1954); Talan v. Murphy, 443 So.2d 207 (Fla. 3d DCA 1983), rev. denied, 451 So.2d 849 (Fla. 1984); Foss v. Mansell, 378 So.2d 802 (Fla. 3d DCA 1979); Haines v. Leonard L. Farber Co., 199 So.2d 311 (Fla. 2d DCA 1967), cert. discharged, 210 So.2d 218 (Fla. 1968). Accord, Longbottom v. Swaby, 397 F.2d 45 (5th Cir.1968).
[10] Florida Rule of Civil Procedure 1.120 provides that "[i]t is not necessary to aver the capacity of a party to sue," and that the party challenging capacity has the affirmative duty to make this an issue by specific negative averment.
[11] It has long been the rule in the admiralty cases that an agent may sue on behalf of his principal so long as the agent's action is ratified before final judgment. See, e.g., Houseman v. The Cargo Of The Schooner North Carolina, 40 U.S. (15 Pet.) 40, 10 L.Ed. 653 (1841); Aunt Jemima Mills Co. v. Lloyd Royal Belge, 34 F.2d 120 (2d Cir.1929); United States v. United States Steel Products Co., 27 F.2d 547 (S.D.N.Y. 1928). This rule is expressly incorporated in Federal Rule of Civil Procedure 17(a), see Techem Chemical Co. v. M/T Choyo Maru, 416 F. Supp. 960 (D.Md. 1976). Because Florida's real party in interest rule is permissive, no joinder or ratification language is found in the rule.