BEAM, Circuit Judge,
dissenting.
Lloyd’s of London (Lloyd’s) issued an insurance policy to Sams Management Group (SMG), delivered certificates of insurance under the marine risk portions of the policy purporting to cover two shipments of frozen chicken purchased by KVADRO for delivery in Russia, collected a premium from SMG for these insurance services but now contends that its policy was actually illusory, insuring no risks for any party involved in the transactions at issue in this case. Lloyd’s contentions are both unconscionable and contrary to the law and facts. Accordingly, I respectfully dissent.
The district court, accepting Lloyd’s gloss on the facts, Lloyd’s interpretation of the involved documents and Lloyd’s construction of the Arkansas Uniform Commercial Code (UCC), held that title to the chicken passed to KVADRO upon delivery of the products to the ship for transportation, leaving SMG without an insurable interest.[7] This conclusion is clearly wrong.
*1021 It is undisputed that the invoices prepared by SMG selling the chicken to KVA-DRO indicated that this was to be a C.I.F. transaction. A C.I.F. sale means that the price includes the cost of the goods, insurance, and freight. Ark.Code Ann. § 4-2-320(1). The seller must put the goods in possession of the carrier and obtain bills of lading; load the goods and obtain a receipt indicating that the freight is paid; obtain a policy or certificate of insurance; prepare an invoice; and forward all documents to the buyer. Id. § 4-2-320(2). An insurance policy or certificate should list either the buyer, in this case KVADRO, or “for the account of whom it may concern,” again, in this case, KVADRO. Id. § 4-2-320, cmt. n.9.[8] A C.I.F. sale is “not a destination but a shipment contract with risk of subsequent loss or damage to the goods passing to the buyer upon shipment if the seller has properly performed all his obligations.” Id. § 4-2-320, cmt. n. 1 (emphasis added). In this case, SMG had an insurable interest at all times because the seller (SMG) failed to procure insurance from Lloyd’s on behalf of the buyer (KVA-DRO) [9] and because the payment terms were contrary to a C.I.F. contract.
I first consider the insurance requirement. The terms of the Lloyd’s policy are found in Exhibit I. Appellant’s Abstract at 240-295. The insured is defined as “Sams Management Group, Inc & /or Mornings-tar Provisions LLC and/or as Agents and/or Subsidiary and/or Associated and/or for whom they may have instructions to insure.” Id. at 242. It is certainly arguable that a generic reference to “for whom they may have instructions to insure” could have made KVADRO an insured. There is absolutely no evidence, however, that Lloyd’s was instructed to or did insure anyone but SMG.[10]
The Lloyd’s policy requires the issuance of an insurance certificate for each transaction. Id. at 254-56. This was done. The certificates issued in conjunction with this particular sale were, however, “effected for account of Sams Management Group, Inc. or Order.” Id. at 296-99. KVADRO is not mentioned. The UCC does, as earlier noted, contemplate insurance effected “for the account of whom it may concern” but, again, no such designation is contained in either certificate. *1022 Without a specific reference to KVADRO or the more general reference to “of whom it may concern,” the insurance that SMG bought from Lloyd’s was not for the benefit of the buyer, as required under a C.I.F. contract.[11] Ark.Code Ann. § 4-2-320, cmt. n.9. Thus, SMG at all times relevant retained an insurable interest in the chicken, as an insurer.
Under a C.I.F. contract, SMG had an obligation to “obtain a policy or certificate of insurance.” Id. § 4-2-320(2)(c). By failing to have the buyer named, either specifically or generically, on the certificates of insurance, under Lloyd’s insurance policy which specifically precluded third-party benefits, SMG became the insurer of the shipment, either intentionally or unintentionally. Kumar Corp. v. Nopal Lines, Ltd., 462 So.2d 1178, 1184 (Fla.Dist.Ct.App.1985). As the insurer of the shipment, SMG was obliged to pay KVADRO, the buyer of the goods, for any loss it might sustain. Under this scenario and assuming this to be a C.I.F. contract, SMG clearly retained an insurable interest in the shipment of chicken which interest it indemnified under the terms and conditions of the policy and certificates of insurance it purchased and received from Lloyd’s.
Second, the payment terms in the contract dictate that this transaction was not a C.I.F. sale. The court correctly notes that “a course of dealing that explains or supplements a contract is competent evidence of the parties’ intent and can become a part of a contract.” Bank of Am. v. C.D. Smith Motor Co., 353 Ark. 228, 106 S.W.3d 425, 429-30 (2003). The “terms or conditions agreed to by the parties must control over the general reference to C.I.F. contained on the face of [a] document.” Steuber Co. v. Hercules, Inc., 646 F.2d 1093, 1097 (5th Cir.1981). “ ‘[I]f according to the intention of the parties the actual delivery of the goods [to the buyer] is an essential condition of performance, the contract is not a c.i.f. contract.’ ” Kumar Corp., 462 So.2d at 1184 (quoting C. Schmitthoff, Schmitthojfs Export Trade, The Law and Practice of International Trade, 39 (7th ed.1980)) (alteration in original). While the commentary to the UCC explains that under a C.I.F. contract, title and risk of loss pass to the buyer upon shipment, Ark.Code Ann. § 4-2-320 cmt. n. 1, there is no mention of the risk of loss in the text of the UCC. See id. § 4-2-320. “The commentary to a statute is not controlling over the statute’s clear language, but is a highly persuasive aid to construing that statute.” Huffman v. Ark. Judicial Discipline and Disability Comm’n, 344 Ark. 274, 42 S.W.3d 386, 392 (2001).
Here, final payment by KVADRO was not to be made against the documents as required under a C.I.F. contract, Arkansas Code Annotated § 4-2-320(4), but was rather to be made upon delivery of the goods to KVADRO or its designated consignee in St. Petersburg, Russia.[12] The *1023 sales contracts required sixty percent payment “due 19 days after discharge” of the chicken from the ship in St. Petersburg, Appellant’s Abstract at 32-33, obviously a payment to be made subsequent to the completion of “freight to the named destination.” Ark.Code Ann. § 4-2-320(1). As can be seen, these terms patently flout the C.I.F. requirements of the UCC. Id. Likewise, the deposition testimony and the actions of SMG and KVADRO run in direct opposition to the UCC commentary, which would pass the risk of loss to the buyer upon shipment. Id. § 4-2-320 cmt. n.l. Brant Turner of SMG testified that C.I.F. meant “[c]ost, insurance, and freight,” explaining “I had the freight insurance.” Appellant’s Abstract at 39-40. He also explained that the arrangement with SMG’s supplier allowed for SMG to make payments as sales commenced after the product was at its destination.[13] Id. Andrew Sams of SMG explained the difference between F.A.S. and C.I.F. contracts as billing terms, id. at 315, dependent on whether “our container rate for shipping included the discharge into the container yard.” Id. at 313. Further, SMG behaved as though it retained both title and risk of loss: SMG retained the third original of the Bills of Lading, Appellant’s Abstract at 40, dealt directly with the shipper to change the consignee on the Bills of Lading, id. at 43, accepted the loss of the chicken by crediting KVADRO’s payment to other shipments, id. at 65, and never demanded payment of the final sixty percent KVADRO “didn’t have an obligation” to pay, having never received the product. Id. at 314. Indeed, the Arkansas State Supreme Court has said that it will adopt the commentary to the Criminal Code unless “clearly convinced that it is erroneous or that it is contrary to the settled policy of this state.” State v. Reeves, 264 Ark. 622, 574 S.W.2d 647, 648-49 (1978). Faced with a situation where the commentary is directly contrary to the intent and actions of the parties, the court should not insert the UCC commentary into the SMG-KVA-DRO contract. Therefore this was not a “true” C.I.F. sale with all the trappings added by. the UCC and its commentary, title did not pass upon shipment, and SMG retained an insurable interest in the chicken.
For the reasons stated, SMG at every step had an insurable interest in the frozen chicken covered by the Lloyd’s policy and certificates of insurance. Thus, I would reverse the district court and remand for further proceedings.

. Arkansas defines an insurable interest as, “any actual, lawful, and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction, or pecuniary damage or impairment.'' Ark.Code Ann. § 23-79-104. An insurable interest extends beyond a property interest: “in order to have an insurable interest, a party does not have to have legal title to the property insured, but some legal basis for the assertion of interest. This legal interest can be based upon '(a) factual expectation of damages, (b) property interests, (c) legal liability, (d) and contract right.’ " Beatty v. USAA Cas. Ins., 330 Ark. 354, 954 S.W.2d *1021 250, 254 (1997), quoting Warren Freedman, Richards on the Law of Insurance § 2:5.

. A C.I.F. contract “contemplates that before the goods arrive at their destination they may be sold again and again on C.I.F. terms.” Ark.Code Ann. § 4-2-320, cmt. n.8. The original insurance policy remains with the goods. Id.

. The court notes that the district court found that "[i]t is undisputed SMG complied with all its obligations under the contracts with KVADRO.” Ante at 1018. This was a fact advanced by Lloyd's in the context of a C.I.F. contract. While SMG did not dispute that it had complied with its obligations under the contract, it contended that the contract was actually an F.A.S. contract, which imposes different contractual obligations than a C.I.F. contract, particularly with respect to insurance. The district court's further finding that SMG complied with all C.I.F. obligations seems solely based on Lloyd's presentation of facts disputed by SMG and was made without the existence of any insurance policies or certificates naming KVADRO as insured. This factual determination by the district court was not made under evidence most favorable to the non-moving party and was an improper exercise of the district court's authority under a motion for summary judgment.

.Further, the Lloyd’s policy contained a third-party exclusion clause that Lloyd’s successfully used to deny benefits to the freight carrier, P & O, and almost certainly would have been used by Lloyd's to disclaim any benefits to KVADRO. Appellant's Abstract at 245. This exclusion clause also appears on each of the insurance certificates. Id. at 296-99.

. This deficiency may have been the stuff of a claim by KVADRO against SMG, had KVA-DRO actually retained a financial interest in the shipment, which it did not do as established by the record. Appellant's Abstract at 65. But, in any event, SMG’s purported breach of its obligation to KVADRO provides no basis for Lloyd’s to disclaim coverage under its policy or certificates.

. Though the UCC allows the existence of a C.I.F. contract with payment due after the arrival of the goods, Ark.Code Ann. § 4-2-321(3), this C.I.F. variant nonetheless does not contemplate arrival of the goods as a condition precedent to payment. Id. at cmt. In contrast, the SMG-KVADRO contract conditioned payment on the arrival of the goods in St. Petersburg, evidenced by the nonpayment of the final sixty percent installment, as well as the transfer of KVADRO’s previous payments to subsequent shipments. Appellant's Abstract at 65.

. The fact that SMG owed its supplier for the chicken is likely sufficient to vest SMG with an insurable interest. See Hartford Ins. Co. v. Stanley, 7 Ark.App. 94, 644 S.W.2d 628, 629 (1983) (In examining a situation where a cotton picker had been sold and delivered to the buyer, because the seller still owed money to his financier, the court concluded that "as long as [the seller] was legally liable for the purchase price of the cotton picker he had an insurable interest in it. We do not agree that passage of title to the machine destroyed that insurable interest.”).