NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

PIRATE'S TREASURE, INC.,                )
                                        )
            Appellant,                  )
                                        )
v.                                      )        Case No. 2D18-2774
                                        )
CITY OF DUNEDIN, FLORIDA, a             )
municipal corporation, and MATTHEW      )
CAMPBELL, an individual,                )
                                        )
            Appellees.                  )
_____ )

Opinion filed August 16, 2019.

Appeal from the Circuit Court for Pinellas
County; Cynthia Newton, Judge.

David J. Melvin and Keathel Chauncey of
Fresh Legal Perspective, PL, Tampa, for
Appellant.

Jay Daigneault and Randol D. Mora of
Trask Daigneault, LLP, Clearwater, for
Appellee City of Dunedin.

Bennett C. Lofaro of Boyd Richards
Parker & Colonnelli, P.L., Tampa, for
Appellee Matthew Campbell.

SALARIO, Judge.

Pirate's Treasure, Inc. sued the City of Dunedin and its employee,

Matthew Campbell, over their handling of Pirate's Treasure's request for City approval

to redevelop real property. While the case was pending, Pirate's Treasure transferred the property to Pirate's Cove Holdings, LLC. The City filed a motion for summary judgment in which Mr. Campbell joined, arguing that upon the transfer to Pirate's Cove, Pirate's Treasure lost any interest in the property and, as a consequence, lost standing to maintain the suit. The trial court granted the motion and rendered a final judgment accordingly. Because there are genuine issues of material fact about whether Pirate's Treasure has an interest in the outcome of the controversy sufficient to support its continued standing, we reverse and remand for further proceedings.

I.

The course of dealings between Pirate's Treasure and the City that led to this dispute and the zoning and land use regulations applicable to those dealings, as presented by the pleadings in the circuit court, are a pretty complex affair. In layman's terms, here is what the reader needs to know. Pirate's Treasure used to own upland and submerged property in the City upon which it operated a marina. In 2006, it began having discussions with the City about the zoning and land use approvals it would need to expand the marina and to build a restaurant on the upland property. On the City's end, Mr. Campbell played a key role in those discussions.

In Pirate's Treasure's telling, the City's approval of the proposed redevelopment looked like a sure thing. Mr. Campbell and other City employees told it that the marina expansion and the restaurant construction would both be approved. Buoyed by those assurances, Pirate's Treasure hired an engineering firm to prepare a site plan for the City's approval. Throughout 2008 and early 2009, the approval process moved smoothly, and—again, we stress, in Pirate's Treasure's telling—the City assured it that the redevelopment was approved subject to a couple of minor issues. Pirate's

- 2 -

Treasure demolished an existing structure on the property to prepare for the redevelopment that it believed was a lock in terms of City approval.

Things hit a snag in mid-2009, however, precipitated in part by objections raised by an owner of property next to Pirate's Treasure's. Although the City officially approved the marina expansion in 2010, it told Pirate's Treasure in 2011 that it viewed the application for approval of the restaurant construction as having been terminated and that it would have to submit a new application for that part of the proposed redevelopment. Pirate's Treasure considered this a big problem because, among other reasons, the City also took the position that revisions to the City's zoning and land use regulations that went into effect while the original application was pending would be deemed to apply to any new application.

In September 2011, Pirate's Treasure filed a complaint against the City in the circuit court seeking a declaratory judgment that its application for approval of the restaurant construction was never lawfully terminated and that the zoning and land use regulations in effect at the time its original application was filed governed the approval process. It also sought a writ of mandamus compelling the City to complete its review of the application for approval for the restaurant construction within a reasonable time. The case was scheduled for a trial in April 2013 but was taken off calendar with the agreement of the parties. Things remained dormant for quite some time after that.

On December 3, 2014, Pirate's Treasure executed a warranty deed conveying the property at issue to Pirate's Cove, a limited liability company that appears to be related in some way to Pirate's Treasure. Two weeks later, on December 17, 2014, Pirate's Treasure filed an amended complaint in which it continued to allege that it was the owner of the property. The amended complaint repleaded the claims for

- 3 -

declaratory relief and a writ of mandamus asserted in the original and also included new claims for negligent misrepresentation and fraud against both the City and Mr. Campbell, which alleged that Pirate's Treasure suffered damages by taking actions such as the commencement of construction in reliance on the City's and Mr. Campbell's alleged representations about the approval of the redevelopment.

The new tort claims sparked litigation between Pirate's Treasure and the City over sovereign immunity. The circuit court dismissed the fraud claim against the City on that basis but declined to dismiss the negligent misrepresentation claim. On July 11, 2017, Pirate's Treasure filed a second amended complaint that, in accord with the trial court's dismissal order, deleted the fraud claim against the City but that was identical to its predecessor in all other important respects—including the allegation that Pirate's Treasure owned the property at issue. The City responded with a motion for summary judgment arguing that Pirate's Treasure lost standing to maintain this action because it no longer owns the property—having transferred it to Pirate's Cove back in 2014. Mr. Campbell joined in the City's motion.

The City supported its motion with a copy of the warranty deed by which Pirate's Treasure conveyed the property to Pirate's Cove and a set of requests for admission it served on Pirate's Treasure—to which Pirate's Treasure failed to respond and thus technically admitted—establishing that Pirate's Treasure did not own the property any longer. Pirate's Treasure responded with an affidavit from Mark Swick, a representative of Pirate's Cove, in which Mr. Swick swore that Pirate's Treasure had "at all times been authorized to act on behalf of [Pirate's Cove] in connection with the renovation of the property" and that since the transfer of the property in 2014, Pirate's Treasure "has been an authorized representative of [Pirate's Cove] for the purpose of

- 4 -

submitting, managing, and obtaining building permits, inspections, applications, site plans, and proposed construction in connection with the renovation." Pirate's Treasure argued that through "excusable neglect and oversight" it failed to update the complaint to reflect the change in ownership and argued (1) that the law did not require it to have a present interest in the property for it to sustain its tort claims and (2) that it had an interest sufficient to support its standing to maintain the declaratory judgment and mandamus claims because it was Pirate's Cove's authorized agent. While the motion for summary judgment was pending, Pirate's Treasure filed a motion for leave to file a third amended complaint to correct its allegations as to the ownership of the property.

The trial court rendered an unelaborated order granting the City's motion for summary judgment and, subsequently, a final judgment in favor of the City and Mr. Campbell. It never passed on Pirate's Treasure's motion for leave to file a third amended complaint. This is Pirate's Treasure's timely appeal. While this appeal was pending, this court rendered an opinion that reversed the circuit court's decision not to dismiss the negligent misrepresentation claim against the City, holding that the City did not owe Pirate's Treasure any duty of care. See City of Dunedin v. Pirate's Treasure, Inc., 255 So. 3d 902, 905-06 (Fla. 2d DCA 2018). As a result, the two tort claims involved in this appeal are relevant only as to Mr. Campbell.

II.

We review an order granting summary judgment de novo. Fields v. Devereux Found., Inc., 244 So. 3d 1193, 1195 (Fla. 2d DCA 2018). A party is entitled to summary judgment when "the pleadings and summary judgment evidence on file show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fla. R. Civ. P. 1.510(c). The procedure is

- 5 -

well settled.  Initially, a movant seeking summary judgment must prove through evidence—affidavits, depositions, interrogatory answers, and the like, see Fla. R. Civ. P. 1.510(c)—that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.  See Fields, 244 So. 3d at 1195-96 (explaining that the movant's burden cannot be satisfied by pointing to an absence of evidence to support the nonmovant's case (quoting Derogatis v. Fawcett Mem'l Hosp., 892 So. 2d 1079, 1083 (Fla. 2d DCA 2004))).  If it does so, the burden shifts to the nonmovant to present evidence showing that a genuine issue of material fact remains to be tried.  See McNabb v. Taylor Elevator Corp., 203 So. 3d 184, 185 (Fla. 2d DCA 2016) (citing First N. Am. Nat'l Bank v. Hummel, 825 So. 2d 502, 503 (Fla. 2d DCA 2002)).  The nonmovant's summary judgment evidence need not, however, be sufficient to sustain a verdict in its favor at a trial.  4 Corners Ins., Inc. v. Sun Publ'ns of Fla., Inc., 5 So. 3d 780, 784 (Fla. 2d DCA 2009).

Here, the legal question that defines whether there is a genuine issue of material fact is whether Pirate's Treasure's transfer of the property at issue to Pirate's Cove divested Pirate's Treasure of standing to maintain this action.  In Florida, a party has standing when it has "a sufficient interest at stake in the controversy which will be affected by the outcome of the litigation."  Jamlynn Invs. Corp. v. San Marco Residences of Marco Condo. Ass'n, 544 So. 2d 1080, 1082 (Fla. 2d DCA 1989); see also Gen. Dev. Corp. v. Kirk, 251 So. 2d 284, 286 (Fla. 2d DCA 1971) ("Standing is, in the final analysis, that sufficient interest in the outcome of litigation which will warrant the court's entertaining it.").  Although this conception of standing is less demanding than the conception of standing that prevails in the federal courts, see Dep't of Revenue v. Kuhnlein, 646 So. 2d 717, 720 (Fla. 1994), it has been understood to mean that a

- 6 -

party must "demonstrate a direct and articulable stake in the outcome of a controversy" to open the courthouse doors, Brown v. Firestone, 382 So. 2d 654, 662 (Fla. 1980). See also Whitburn, LLC v. Wells Fargo Bank, N.A., 190 So. 3d 1087, 1091 (Fla. 2d DCA 2015) ("[T]o have standing, a party must demonstrate a direct and articulable interest in the controversy, which will be affected by the outcome of the litigation." (quoting Centerstate Bank Cent. Fla., N.A. v. Krause, 87 So. 3d 25, 28 (Fla. 5th DCA 2012))). In determining whether a party has such an interest in the judicial resolution of a dispute, it is helpful to ask whether a decision in the case will actually resolve the rights and obligations of the parties, in which case standing likely exists, or simply will produce an advisory opinion, in which case it does not. See Kuhnlein, 646 So. 2d at 721; Warren Tech., Inc. v. Carrier Corp., 937 So. 2d 1141, 1142 (Fla. 3d DCA 2006).

In the trial court and here, the City and Mr. Campbell have argued that any interest Pirate's Treasure had in the dispute over the City's approval of the proposed redevelopment vanished when it transferred the property to Pirate's Cove because distinct legal entities like Pirate's Treasure and Pirate's Cove, even if related, are not entitled to assert each other's rights in litigation. That is true, as far as it goes. See, e.g., Cellco P'ship v. Kimbler, 68 So. 3d 914, 918 (Fla. 2d DCA 2011) ("Further, Cellco and Alltel are separate legal entities, and as such, Cellco—the parent corporation—cannot 'exercise the rights of its subsidiary.' " (quoting Am. Int'l Grp., Inc. v. Cornerstone Bus., Inc., 872 So. 2d 333, 336 (Fla. 2d DCA 2004))). But saying that Pirate's Treasure no longer has any interest in the property sought to be redeveloped is not the same as saying that Pirate's Treasure no longer has any interest in the outcome of this lawsuit. To assess whether the latter is true and susceptible of being decided by way of a motion for summary judgment, we need to look at each claim Pirate's Treasure has

- 7 -

alleged and ask whether the record "conclusively shows" that Pirate's Treasure lacks standing to assert that claim "as a matter of law." See Hervey v. Alfonso, 650 So. 2d 644, 646 (Fla. 2d DCA 1995) (discussing summary judgment standards).

With respect to the claims for fraud and negligent misrepresentation, it is clear that Mr. Campbell—the only defendant against whom these claims remain pending—has not carried his initial burden of demonstrating the absence of any genuine issue of material fact. Simply put, Mr. Campbell has failed to demonstrate that the legal or factual basis for Pirate's Treasure's assertion of these claims is in any way contingent on its continued ownership of the property. On the contrary, as pleaded, these are claims to recover damages that Pirate's Treasure (not Pirate's Cove) suffered because Pirate's Treasure (not Pirate's Cove) relied upon alleged misstatements Mr. Campbell made to Pirate's Treasure (not Pirate's Cove). On their face, the legal elements of the causes of action for fraud and negligent misrepresentation do not require that Pirate's Treasure continue to own the property in order to recover for economic losses incurred in these circumstances. See Butler v. Yusem, 44 So. 3d 102, 105 (Fla. 2d DCA 2010) (stating that the elements of fraud are (1) a false statement of material fact, (2) the defendant's knowledge that the statement is false, (3) the defendant's intention that the statement induce reliance, and (4) consequent injury by the party acting in reliance on the representation); Baggett v. Electricians Local 915 Credit Union, 620 So. 2d 784, 786 (Fla. 2d DCA 1993) (stating substantially identical elements for negligent misrepresentation except that the defendant's state of mind must be either intentional or negligent and the plaintiff must have acted in justifiable reliance). And Mr. Campbell has not pointed to anything in the summary judgment record to show that the facts of

this case are such as to require continued ownership of the property by Pirate's Treasure in order to pursue these kinds of claims for historical damages.

Things might be different if, for example, there had been summary judgment evidence showing that Pirate's Treasure assigned or transferred its causes of action for damages related to the renovation of the property to Pirate's Cove when it transferred the property to Pirate's Cove. Then we might say that Pirate's Treasure lost the interest in the outcome of the litigation that it once had. But there was no such summary judgment evidence here. What the record in this case shows instead is that Pirate's Treasure is seeking to recover from Mr. Campbell for its own economic injuries under recognized tort theories that, if proved at trial, permit a court to redress those injuries. Mr. Campbell failed to prove that there was no genuine dispute that Pirate's Treasure lacks standing to do that, see Sun States Utils., Inc. v. Destin Water Users, Inc., 696 So. 2d 944, 945 n.1 (Fla. 1st DCA 1997), and he was thus not entitled to the summary judgment on the tort claims that he received in the trial court.

The summary judgment on the claims for declaratory and mandamus relief against the City is likewise infirm because Mr. Swick's affidavit raises a fact issue as to whether Pirate's Treasure is Pirate's Cove's authorized representative agent for purposes of maintaining this litigation to secure the City's approval of the restaurant-related redevelopment. As a legal matter, a party may have standing to maintain a suit not only when the party itself has the required interest in the controversy but also where the party represents another person who has the required interest. Elston/Leetsdale, LLC v. CWCapital Asset Mgmt. LLC, 87 So. 3d 14, 17 (Fla. 4th DCA 2012) (quoting Kumar Corp. v. Nopal Lines, Ltd., 462 So. 2d 1178, 1183 (Fla. 3d DCA 1985)). Because Florida Rule of Civil Procedure 1.120(a) permits an action to be prosecuted by

- 9 -

someone representing the real party in interest in a dispute, the courts have held that "where a plaintiff . . . is maintaining the action on behalf of the real party in interest, its action cannot be terminated on the ground that it lacks standing." Kumar, 462 So. 2d at 1183; see also St. Martin's Episcopal Church v. Prudential-Bache Sec., Inc., 613 So. 2d 108, 109 (Fla. 4th DCA 1993) ("Issues of standing, as a prudential question anyway, are undoubtedly affected by Florida Rule of Civil Procedure 1.210(a) . . . ." (footnote omitted)).

Here, the declaratory judgment count seeks to resolve the questions of whether the application for approval of the restaurant portion of the redevelopment was terminated and whether new zoning regulations would apply to any new application. The mandamus count seeks to compel a ruling from the City with respect to the restaurant portion of the redevelopment. Mr. Swick, a representative of Pirate's Cove, has submitted an affidavit establishing that Pirate's Treasure is authorized to act on behalf of Pirate's Cove with respect to exactly these matters—the redevelopment of the property to include a restaurant, in general, and application and permitting matters, in particular. Under the summary judgment standard and in the absence of any evidence to the contrary from the City or Mr. Campbell, Mr. Swick's affidavit creates a genuine issue of material fact as to whether Pirate's Treasure is authorized to maintain this action on behalf of Pirate's Cove. See Sawyerr v. Se. Univ., Inc., 993 So. 2d 141, 142 (Fla. 2d DCA 2008) (stating that, on a motion for summary judgment, "[a]ll doubts and inferences shall be resolved in favor of the nonmoving party").

The City relies extensively on City of Winter Park v. Rich, 692 So. 2d 986, 986-87 (Fla. 5th DCA 1997), but that case is distinguishable (among other reasons) precisely because there was no evidence that the plaintiff was acting on behalf of a

- 10 -

property owner.  In <u>Rich</u>, a property owner received a writ of certiorari from a circuit court with respect to a local government's denial of his application for a variance from a comprehensive plan.  <u>Id.</u> at 986.  Before the circuit court granted relief, the property owner announced that he sold the property.  <u>Id.</u>  On the local government's second-tier certiorari petition, the Fifth District held that the former property owner "lost standing . . . because he no longer owned the property at issue."  <u>Id.</u> at 986-87.  It emphasized that (1) the former property owner did attempt to amend his pleadings to address the question of ownership and (2) the former property owner did not attempt to assert that he sold the property for less than its value because of the local government's denial of the variance—a theory the Fifth District evidently thought would have given him a continuing interest in the outcome of the proceedings.  <u>Id.</u> at 986.

In contrast to the former property owner in <u>Rich</u>, Pirate's Treasure both attempted to amend its complaint in the circuit court to clarify the question of ownership and offered summary judgment evidence to support a theory of standing that was not dependent on its continued ownership of the property—its acting as a representative of Pirate's Cove.  It also bears emphasis that <u>Rich</u> was not a case to which the summary judgment standard applied.[1]  The very most that <u>Rich</u> stands for is that a property owner who challenges a local government's land-use decision risks losing standing to obtain a

_____

[1]Another case the City emphasizes, <u>Ahearn v. Mayo Clinic</u>, 180 So. 3d 165, 174 (Fla. 1st DCA 2015), did affirm a summary judgment finding that a class representative lost standing to maintain a class action challenging certain charges imposed by the defendant when the defendant waived the class representative's payment of the charges and offered to pay his attorneys' fees and costs.  That decision has no bearing here because, unlike the facts presented on the summary judgment record in this case, there was no summary judgment evidence that the plaintiff in <u>Ahearn</u> continued to have standing on some basis other than his being indebted to the defendant for the disputed charge.

judicial resolution of the controversy if it sells the property while the dispute is pending and has no legally valid alternative theory of standing. For the reasons we have explained, that principle does not resolve this case on the summary judgment record developed in the circuit court.

The City further argues that the doctrine of collateral estoppel precludes Pirate's Treasure from litigating the question of standing because that question was decided adversely to it in another case it brought against the City. That is meritless. The City did not present any summary judgment evidence—nothing at all—about the other case that would have permitted the trial court, or this court reviewing the trial court's final judgment, to determine whether the elements of collateral estoppel are satisfied. See Goodman v. Aldrich & Ramsey Enters., Inc., 804 So. 2d 544, 546-47 (Fla. 2d DCA 2002) (setting forth the collateral estoppel requirements as follows: "(1) an identical issue must have been presented in the prior proceeding; (2) the issue must have been a crucial and necessary part of the prior determination; (3) there must have been a full and fair opportunity to litigate that issue; (4) the parties in the two proceedings must be identical; and (5) the issues must have been actually litigated."). Even if we accept—as Pirate's Treasure concedes—that the parties were identical in both actions, the summary judgment record tells us nothing, most critically, about whether the identical issue (standing to litigate a declaratory judgment and mandamus claim materially identical to the claims here) was actually litigated and decided in the earlier case. See Neapolitan Enters., LLC v. City of Naples, 185 So. 3d 585, 591 (Fla. 2d DCA 2016); Porter v. Saddlebrook Resorts, Inc., 679 So. 2d 1212, 1214-15 (Fla. 2d DCA 1996). All we think we know about the prior litigation, we have learned only from the arguments of the City's counsel at the summary judgment hearing, and argument of

- 12 -

counsel is not competent evidence. See Heller v. Bank of Am., NA, 209 So. 3d 641, 644 (Fla. 2d DCA 2017). Collateral estoppel provides no basis to affirm the circuit court's summary judgment.

III.

On the summary judgment record developed in the circuit court and the arguments briefed in this one, it is not possible to say as a matter of law that Pirate's Treasure lacks standing to continue to maintain this action.[2] Accordingly, we reverse the final summary judgment in favor of the City and Mr. Campbell and remand the case to the trial court for further proceedings consistent with this opinion.

Reversed and remanded.

NORTHCUTT and SLEET, JJ., Concur.

---

[2]This case potentially presents other issues that were neither litigated in the circuit court nor argued here, including (1) whether and to what extent rule 1.260(c), which governs proceedings in the circuit court when there has been a transfer of interest, is applicable here, see Schmidt v. Mueller, 335 So. 2d 630, 631 (Fla. 2d DCA 1976), and (2) whether Pirate's Treasure might have standing to pursue the claims for declaratory and mandamus relief in its own right on some other theory, such as an economic benefit it has been denied by the absence of city approval for the restaurant part of the redevelopment, cf. Rich, 692 So. 2d at 986. We express no opinion on these matters. We simply note that our silence about them—or any other matter not explicitly addressed in this opinion—should not be understood to have decided them by implication.